OPINION OF THE COURT
 

 Wesley, J.
 

 Defendant Enrique Ortiz was convicted of two counts of at
 
 *535
 
 tempted murder and one count each of criminal possession of a weapon in the second and third degrees for shooting at two New York City police officers outside of an apartment building in Manhattan in the early morning hours of March 22, 1993. The two officers who were the intended victims of the attack were brought back to the apartment building after seeking treatment at a hospital, and identified defendant as the perpetrator. The Appellate Division affirmed defendant’s conviction, holding that, since the identification procedure was conducted in close geographic and temporal proximity to the crime, the procedure, which it characterized as a showup, was proper.
 

 On appeal, defendant contends that the trial court erred in refusing to suppress the trial identification testimony of the two officers because the People did not present any evidence at the suppression hearing to establish that the identification procedure that was employed was not unduly suggestive. Because no evidence whatsoever was offered as to the circumstances of the identification procedure itself, we hold that the People failed to meet their burden of coming forward with evidence that the procedure was not unduly suggestive. We therefore reverse defendant’s conviction and remit for a new trial, to be preceded by an independent source hearing.
 

 Officers Colon and Sullivan were on patrol in the vicinity of 78 Ellwood Avenue when they received a radio dispatch to assist an ambulance that had been called to the area. Upon arriving at the scene and being advised of a possible disturbance in the building, the officers heard gunshots and went to investigate. The officers saw a man, later identified at trial as defendant, just outside the apartment. As they approached the building, the man began shooting at them; Colon returned the fire. At the end of the 10-second exchange, the man fled into the building.
 

 Few details of this initial confrontation were brought out at the identification hearing. Neither Colon, Sullivan nor any other witness present at the time defendant was initially identified was called by the People to testify. The only witness who did testify at the hearing was Officer Reardon, who arrived with his partner, Officer Almodovar, shortly after the initial confrontation.
 

 According to Reardon’s hearing testimony, shortly after he arrived at the scene, the four officers went looking for the perpetrator. While Sullivan held a man who had come out of the building, Reardon, Colon and Almodovar entered the build
 
 *536
 
 ing, and observed 7 to 10 male teenagers in the lobby. After Almodovar told Reardon that he had seen one of the people in the lobby come out of an apartment down the hall, Reardon knocked on the door of the apartment; a woman answered. The officer questioned her concerning whether she had heard any disturbances outside-her apartment, and in the process saw a man run from one room of the apartment to another. Reardon and Almodovar then entered the apartment and found defendant lying in bed; he did not appear to be sleeping and was breathing heavily and perspiring. Eventually defendant was taken to the lobby, where he was placed with two other unidentified men. Upon reentering the apartment, Reardon found a pistol on the ground outside the window of the room from which defendant had been running.
 

 By this time, other officers had arrived, and Colon and Sullivan had been taken to the hospital. Defendant was placed in handcuffs, and waited in the lobby with several uniformed police officers for Colon and Sullivan to be brought back to the scene for identification. The suppression court found that the identification procedure occurred between one-half hour and one and one-half hours after the shooting.
 
 *
 
 While Officer Rear-don was able to testify with regard to the conditions under which defendant was initially apprehended and questioned in the apartment building, he did not actually observe the showup. In fact, Reardon had left the building prior to Colon and Sullivan being brought back to the scene. He saw the two officers approaching from down the street as he was exiting the building.
 

 At the close of the hearing, defense counsel moved to suppress the identification of defendant, arguing that the People had failed to meet their initial burden of proving that the showup was proper, and pointing particularly to the absence of any proof from any witness who had actually seen Colon and Sullivan pick out defendant. The trial court rejected this argument, holding that the showup was permissible since it was proximate in time and place to the crime and the Appellate Division affirmed. We now reverse.
 

 Initially, we reject the People’s contention that defendant’s argument is unpreserved. At the close of the hearing,
 
 *537
 
 defendant objected that the People had failed to meet their burden of proof on the issue of the propriety of the showup, and later specifically pointed to the absence of proof from any witness who had actually observed the showup. This constituted a sufficiently specific objection to alert the People to the inadequacies of their proof, to bring the precise issue to the trial court’s attention, and to preserve the issue as a matter of law for this Court’s review.
 

 Showup identifications are disfavored, since they are suggestive by their very nature
 
 (People v Rivera,
 
 22 NY2d 453). Nevertheless, prompt showup identifications which are conducted in close geographic and temporal proximity to the crime are not "presumptively infirm,” and in fact have generally been allowed
 
 (People v Duuvon,
 
 77 NY2d 541, 543-544). This is not to say that showup identifications are routinely admissible. Indeed, while in
 
 Duuvon
 
 this Court upheld the admissibility of identification testimony resulting from a showup, we emphasized there that the proof "must be scrutinized very carefully for [evidence of] unacceptable suggestiveness and unreliability”
 
 (People v Duuvon, supra,
 
 77 NY2d, at 543). Where there is "no effort to make the least provision for a reliable identification and the combined result of the procedures employed” establish that the showup was unduly suggestive, the identification must be suppressed
 
 (People v Adams,
 
 53 NY2d 241, 249).
 

 While the defendant bears the ultimate burden of proving that a showup procedure is unduly suggestive and subject to suppression, the burden is on the People first to produce evidence validating the admission of such evidence
 
 (People v Chipp,
 
 75 NY2d 327, 335). Initially, the People must demonstrate that the showup was reasonable under the circumstances. Proof that the showup was conducted in close geographic and temporal proximity to the crime will generally satisfy this element of the People’s burden
 
 (see, People v Duuvon, supra).
 
 This does not end the inquiry, however. The People also have the burden of producing some evidence relating to the showup itself, in order to demonstrate that the procedure was not unduly suggestive. As we noted in
 
 People v Chipp (supra),
 
 "the People have the initial burden of going forward to establish the reasonableness of the police conduct
 
 and the lack of any undue suggestiveness
 
 in a pretrial identification procedure” (75 NY2d, at 335 [emphasis added];
 
 see also, People v Riley,
 
 70 NY2d 523, 531;
 
 People v Berrios,
 
 28 NY2d 361).
 

 Placing the burden on the People to produce some evidence concerning the circumstances of the identification procedure is
 
 *538
 
 also consistent with CPL 710.60 (3) (b), which provides that the defendant need not allege specific facts tending to show suggestiveness in order to be entitled to a
 
 Wade
 
 hearing. This rule is founded upon the proposition that " 'in many instances a defendant simply does not know the facts surrounding a pretrial identification procedure and thus cannot make specific factual allegations’ ”
 
 (People v Dixon,
 
 85 NY2d 218, 222). A defendant is dependent, to a large extent, upon the evidence bearing on suggestiveness presented by the People; indeed, the defendant does not have an absolute right of compulsory process at such hearings
 
 (People v Chipp, supra,
 
 75 NY2d, at 338-339). Thus, if the People were relieved of their burden of presenting any such evidence, defendants would be unduly prejudiced in their efforts- to establish whether an identification procedure was impermissibly suggestive.
 

 While the People in this case may have met their burden of showing that the identification procedure was reasonable under the circumstances, they failed in their threshold responsibility to call any witness who could testify to the circumstances under which defendant was actually identified. Indeed, from this record, it cannot even be ascertained whether the identification procedure utilized here was a true showup or an impromptu lineup. The People’s procedural burden of production in this respect is minimal; it requires merely some proof of the circumstances of the on-site identification procedure. However, in the complete absence of any such proof, the People failed to meet their burden of producing evidence addressing the suggestiveness of what appears to be an on-site showup identification procedure.
 

 Accordingly the order of the Appellate Division should be reversed, and a new trial ordered, the new trial to be preceded by an independent source hearing.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed and a new trial ordered.
 

 *
 

 Officer Reardon testified at the hearing that one-half hour elapsed between the time of the shooting and the time of the identification procedure. A police report showed that the interval was two hours, which was confirmed by Officer Colon at trial.