■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH McNEIL, Appellant. [834 NYS2d 99]—

Judgment, Supreme Court, New York County (Rena K. Uviller, J., on motion to consolidate; Marcy L. Kahn, J., at suppression hearing; Robert H. Straus, J., at trial and sentence), rendered January 8, 2004, convicting defendant, after a jury trial, of robbery in the first and third degrees, and sentencing him, as a persistent violent felony offender, to concurrent prison terms of 20 years to life and $3^1/_2$ to 7 years, respectively, unanimously reversed, on the law, and the matter remanded for a new trial.

Defendant was charged under indictment No. 832/03 with robbery in the first degree, under the theory that he forcibly stole property from Yasmine Richard while displaying what appeared to be a pistol, and was charged under indictment No. 1428/03 with robbery in the first degree with respect to Krista Dunbar, and with robbery in the third degree and sexual abuse in the first degree with respect to a third victim. It was not an improvident exercise of discretion to grant the People's motion to consolidate the indictments pursuant to CPL 200.20, since the three robberies charged, though relating to separate incidents, are defined by the same or similar statutory provisions, the sexual abuse charge was intertwined with one of the robbery charges, and proof of each crime was separately presented and easily segregable in the mind of the jury (see *People v Lane*, 56 NY2d 1, 7-8 [1982]; *People v Quezada*, 294 AD2d 175 [2002], *lv denied* 98 NY2d 713 [2002]; *People v Negron*, 166 AD2d 165, 166 [1990], *lv denied* 77 NY2d 909 [1991]). The fact that the jury acquitted defendant of the sexual abuse charge and was unable to reach a verdict on the first-degree robbery charge as to Dunbar further indicates that defendant suffered

no prejudice by the consolidation and that the jury was able to segregate the evidence as it related to each charge (*see People v Wright*, 300 AD2d 191, 192 [2002], *lv denied* 99 NY2d 634 [2003]; *Quezada*, 294 AD2d at 176).

By the end of the second round of voir dire, 11 jurors and 2 alternates had been selected, the People had used 12 of their 15 peremptory challenges, defendant had used 13 of his 15 peremptory challenges, and no prospective jurors remained. The trial court announced, "I really don't think it's necessary to call in for another panel when you had all these people to choose from," and asked the parties to agree on two of the already struck veniremembers. The People withdrew their peremptory challenges against two of the panelists. Defendant objected to the process of revisiting stricken panelists, but the trial court asserted there would be no prejudice since defendant could still exercise his unused peremptory challenges. Reiterating his objection, defendant used his last remaining peremptories to strike the two reinstated jurors. At that point, the trial court admitted that it was "constrained to call for another panel . . . an unfortunate situation." Although the entire reason for devising a new voir dire procedure no longer existed, since a third panel would have to be summoned, the trial court refused defendant's request that he be granted two additional peremptory challenges and the People be limited to three, which would restore the number of peremptory challenges to the status quo before the court's panel-conservation process. The court denied the request and tallied that the People had five remaining peremptory challenges and defendant none. Defendant moved for a mistrial, which the court denied.

As the People concede, the trial court committed reversible error by deviating from the order of jury selection set forth in CPL 270.15 (2) and permitting, over defendant's objections, the prosecutor to withdraw two peremptory challenges, resulting in defendant's use of his remaining peremptory challenges to strike the reinstated panelists (*see People v McQuade*, 110 NY 284 [1888]). Accordingly, the judgment must be vacated and the case remanded for a new trial.

Contrary to the assertion in defendant's pro se supplemental brief, the police had reasonable suspicion to stop him. The police received a radio run that a man was robbing a woman on the corner of 117th Street and Lenox Avenue, and upon their arrival at that location an unidentified woman stated, "[t]he guy across the street walking northbound . . . on the west side of Lenox wearing the wool hat had just robbed a female," while pointing at defendant, who was the only person headed in that

direction and the only one wearing a hat (*see People v Benjamin*, 272 AD2d 67 [2000], *lv denied* 95 NY2d 863 [2000]).

The motion court properly found that the showup identification of defendant by Christopher Hall, a citizen-informant, was unduly suggestive, since the police told him beforehand that "they had gotten the person" and "needed to make sure" it was the person he had seen (*see People v Pries*, 206 AD2d 873, 874 [1994]). However, the court erred in finding an independent source for identification at trial based on an inference that Hall must have seen the perpetrator's face, because he observed him on five separate occasions, over a 15-minute period, and noticed his skin color and hairstyle, as well as a cigarette dangling from his mouth. Hall expressly testified that, initially, he "didn't pay attention to [the perpetrator's] face," but only saw the side of his head, which gave him the opportunity to see the skin color, haircut, and cigarette. On each of the subsequent encounters, Hall was either unable to see the face or refused to look at it. Moreover, he specifically stated that his identification was based on the suspect's build and clothes. Thus, Hall had an independent source to describe the perpetrator's physical characteristics and apparel (*see People v Redcross*, 246 AD2d 838 [1998], *lv denied* 92 NY2d 859 [1998]), but the People failed to demonstrate by clear and convincing evidence that the showup would not influence the witness's in-court identification of defendant (*see People v Young*, 7 NY3d 40, 44 [2006]; *People v Underwood*, 239 AD2d 366 [1997], *lv denied* 90 NY2d 911 [1997]).

The showup identification by Yasmine Richard, conducted in close temporal and spatial proximity to the robbery, was not rendered impermissibly suggestive by the fact that defendant was displayed with his hands cuffed behind him, surrounded by uniformed officers, one of whom held his arm, in the vicinity of a number of marked patrol cars, with an "alley light" shining on him, or by an officer's comment that they had a "possible" and that she should "say whether it was him or wasn't him who committed" the robbery (*see People v Rubi*, 19 AD3d 139, 140 [2005], *lv denied* 5 NY3d 809 [2005]). In any event, the hearing court properly found that Richard had an extensive opportunity to view defendant during the lengthy face-to-face robbery, and thus an independent source (*see People v Kilpatrick*, 28 AD3d 360 [2006], *lv denied* 7 NY3d 791 [2006]).

We express no opinion on the remaining issues raised on appeal, and leave them to the sound discretion of the court on retrial, should they arise (*see People v Evans*, 94 NY2d 499, 504-506 [2000]). Concur—Mazzarelli, J.P., Williams, Buckley, Gonzalez and Sweeny, JJ.