THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v OSCAR GUITIERRES and BRANDON ABRIZ, Respondents. [919 NYS2d 211]—

As developed at a *Dunaway/Wade* hearing (*see Dunaway v New York*, 442 US 200 [1979]; *United States v Wade*, 388 US 218 [1967]), on December 29, 2008, at approximately 1:55 A.M., the complainant informed the police that "he had just been robbed by approximately five to six" Hispanic males. Thereupon, the police and the complainant proceeded to conduct a canvass of the surrounding area. During this canvass, without any prompting by the police, the complainant pointed to two groups of individuals on the street and stated, "that's them, those are them over there." One of the groups, which consisted of three individuals, was "cut off" by a police van (hereinafter the first group). Two individuals in the other group (hereinafter the second group) ran away. The complainant was asked by a police officer if the individuals in the first group were involved

in the robbery. The complainant stated that "he wasn't too sure." The police officer then stated to the complainant, "I want you to understand something[,] I can't arrest somebody when you say you're not sure. Either they did or they didn't. I need you to take a good look at them and let me know one by one if they were involved or not involved." At this point, the complainant looked at all three individuals "slowly" and "deliberately," and stated that all three individuals were involved in the robbery. The defendant Oscar Guitierres was one of the three individuals identified by the complainant.

The defendant Brandon Abriz, who was one of the individuals in the second group, was subsequently brought to the complainant for a showup identification. When the complainant was asked if Abriz was involved in the robbery, the complainant initially stated that "he wasn't sure." The police officer told the complainant, "it's either yes or no. I need you to take a good look at him and make sure whether it's yes or no." The complainant then took a "good look" at Abriz, and identified him as being involved in the robbery.

The complainant identified Guitierres and Abriz approximately four blocks away from the crime scene. Further, the time that elapsed from the start of the canvass to when the complainant "pointed out" Guitierres and Abriz "[c]ouldn't have been more than a minute. It all happened very fast."

At the conclusion of the hearing, the Supreme Court granted those branches of the defendants' separate omnibus motions which were to suppress evidence of showup identifications and potential in-court identifications. We reverse.

While showup procedures are generally disfavored, they are permissible where, as in this case, they are employed in close spatial and temporal proximity to the commission of the crime for the purpose of securing a prompt and reliable identification (*see People v Ortiz*, 90 NY2d 533, 537 [1997]; *People v Duuvon*, 77 NY2d 541, 544 [1991]; *People v Hicks*, 78 AD3d 1075 [2010]; *People v McKinnon*, 78 AD3d 864 [2010], *lv denied* 16 NY3d 744 [2011]; *People v Mais*, 71 AD3d 1163, 1165 [2010]; *People v Gonzalez*, 57 AD3d 560, 561 [2008]). Here, the People met their initial burden of establishing the reasonableness of the police conduct and the lack of undue suggestiveness (*see People v Ortiz*, 90 NY2d at 537).

Under the circumstances of this case, the defendant failed to satisfy his burden of proving that the procedure was unduly suggestive and subject to suppression (*id.*). The police officer's statements did not render the showup identification procedures unduly suggestive. The subject statements made by the police

officer to the complainant were balanced and did not pressure the complainant to make positive identifications (*see People v Elliot*, 283 AD2d 183, 183-184 [2001]; *People v Barham*, 216 AD2d 477, 478 [1995]; *People v Jeffries*, 125 AD2d 412 [1986]). Unlike the showup identification of the defendant in *People v McNeil* (39 AD3d 206, 209 [2007]), wherein the police told an informant "beforehand that 'they had gotten the person' and 'needed to make sure' it was the person he had seen," here, there was no suggestion by the police that any of the individuals present had been involved in the crime. Accordingly, it was error to suppress the showup identifications and potential in-court identifications. In light of our determination, the matter must be remitted to the Supreme Court, Kings County, for further proceedings on the indictment (*see People v Williams*, 73 AD3d 1097, 1100 [2010]). Rivera, J.P., Leventhal and Roman, JJ., concur.

Hall, J., dissents and votes to affirm the order appealed from, with the following memorandum: I respectfully dissent from the conclusion reached by the majority because, in my view, the hearing court properly granted those branches of the defendants' separate omnibus motions which were to suppress evidence of showup identifications and potential in-court identifications.

As I see it, the People failed to meet their burden of establishing the reasonableness of the police conduct and the lack of undue suggestiveness (*see People v Ortiz*, 90 NY2d 533, 537 [1997]). With respect to the first group of individuals presented to the complainant, the complainant stated that "[h]e wasn't too sure" if any of those individuals were involved in the robbery. The police officer responded, "I want you to understand something[,] I can't arrest somebody when you say you're not sure. Either they did or they didn't. I need you to take a good look at them and let me know one by one if they were involved or not involved." In my view, these statements encouraged the complainant to make a positive identification. I find the police officer's statement to the complainant that, "I can't arrest somebody when you say you're not sure," to be particularly troubling. This statement put pressure on the complainant to make a positive identification. It played on the complainant's desire to seek justice and perhaps retribution for the crime that was just committed against him. The complainant essentially was instructed that, if he was not sure if any of the individuals in the first group were involved in the robbery, then no arrest would be made. This is a disappointing outcome for both the complainant and the police.

With respect to the second showup identification, the complainant was asked if the defendant Brandon Abriz was involved in the robbery. After the complainant stated that "he wasn't sure," the police officer told the complainant, "it's either yes or no. I need you to take a good look at him and make sure whether it's yes or no." Under the circumstances of this case, I believe this statement also pressured the complainant into making a positive identification.

I highlight the distinction between this case and *People v Elliot* (283 AD2d 183 [2001]). In *Elliot*, after a witness expressed some uncertainty as to whether the defendant was the person he observed breaking into an apartment in another building, a police sergeant stated to the witness that the police needed to know whether he was certain or not in order to decide whether they should continue their search for the burglar (*id.* at 183-184). The Appellate Division, First Department, concluded that the police sergeant's statement did not pressure the witness to identify the defendant (*id.* at 184). Here, in contrast, the police officer impressed upon the complainant that an arrest would not be made unless he was sure that the defendants were involved in the robbery. Unlike the police sergeant in *Elliot*, the police officer here did not state that the police would continue to look for the robbers if the complainant was not sure that the subject individuals were involved in the robbery. To the complainant's mind, he had the option of either making the identification and ensuring an arrest, or going home as a victim without an arrest being made.

Furthermore, the credibility determinations of a hearing court are accorded great deference on appeal, and will not be disturbed unless clearly unsupported by the record (*see People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Meyers*, 80 AD3d 715 [2011]; *People v Blinker*, 80 AD3d 619 [2011]; *People v Bennett*, 57 AD3d 912 [2008]). The hearing court had the opportunity to listen to the police officer's testimony and observe his demeanor on the witness stand. Thus, under the circumstances presented here, I believe that the hearing court's determination that there was a coercive element to the showup identifications should be granted deference. Accordingly, I respectfully dissent.