■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY WARD, Appellant. [984 NYS2d 123]—

Appeal by the defendant from a judgment of the County Court, Nassau County (Peck, J.), rendered March 8, 2011, convicting him of burglary in the first degree, assault in the second degree, petit larceny, and resisting arrest, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial (Sullivan, J.), after a hearing, of that branch of the

defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

On the night of September 10, 2009, Police Officers John Fallace and Terrence Heller responded to a house in Inwood, Nassau County, after hearing a radio transmission of a burglary in progress. When they arrived, the complainant told them that she had seen a middle-aged bald black man wearing black clothing and sneakers climbing out of her bedroom window carrying her purse. The complainant told the officers that her husband's wallet, containing approximately $480 in cash, was missing from the bedroom as well.

Officer Fallace went outside to transmit a description of the perpetrator over the police radio; as he did so Police Officer Nick Collins pulled up in a police car, and Officer Fallace advised him of the perpetrator's description. Almost immediately thereafter, Officer Fallace saw the defendant, who fit that description, walking from a nearby driveway. When the defendant saw Officer Fallace and Officer Collins looking at him, he fled the scene on foot. Officer Fallace told Officer Collins that the defendant was probably "their guy," and they chased and caught him. A violent struggle ensued between the defendant and Officer Collins, joined by other police officers. The defendant did not stop struggling until the officers managed to handcuff his hands and feet, leaving Officer Collins bleeding from his hands and face, with the right side of his face swollen. Once the defendant was subdued, the police officers searched him and found a wad of cash in his pocket.

Officer Fallace then went back to the complainant's house and told her "we have somebody I want you to look at." He took the complainant and her husband around the block to the scene of the defendant's arrest, where the defendant was sitting on the curb, surrounded by police officers. The complainant was crying uncontrollably and did not attempt to identify the defendant. Therefore, Officer Fallace escorted her home so she could calm down. Twenty or 30 minutes later, Officer Fallace escorted her back to the scene of the defendant's arrest, and told her he wanted to "see if she could recognize anybody." As the complainant approached the defendant, police officers pulled him into a standing position and escorted him to within 25 to 30 feet of the complainant. Officer Fallace asked the complainant "[d]o you know this man?" and she identified the defendant as the perpetrator.

Although the complainant's description of the perpetrator was properly admitted into evidence (see People v Sanders, 66

NY2d 906, 908 [1985]; *People v Turner*, 214 AD2d 594 [1995]), her showup identification and in-court identification of the defendant were not. Under New York law, "[s]howup identifications 'are strongly disfavored but are permissible if exigent circumstances require immediate identification (*People v Rivera*, 22 NY2d 453 [1968][,] [*cert denied* 395 US 964 (1969)]), or if the suspects are captured at or near the crime scene and can be viewed by the witness immediately' " (*People v Johnson*, 81 NY2d 828, 831 [1993], quoting *People v Riley*, 70 NY2d 523, 529 [1987]). Showup procedures "are permissible, even in the absence of exigent circumstances, when they are spatially and temporally proximate to the commission of the crime and not unduly suggestive" (*People v Johnson*, 104 AD3d 705, 705 [2013] [internal quotation marks and citation omitted]; *see People v Brisco*, 99 NY2d 596, 597 [2003]; *People v Ortiz*, 90 NY2d 533, 537 [1997]; *People v Gonzalez*, 57 AD3d 560, 561 [2008]; *People v Berry*, 50 AD3d 1047, 1048 [2008]). While the defendant bears the ultimate burden of proving that a showup procedure is unduly suggestive and subject to suppression, "the People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure" (*People v Chipp*, 75 NY2d 327, 335 [1990], *cert denied* 498 US 833 [1990]; *see People v Ortiz*, 90 NY2d at 537; *People v Riley*, 70 NY2d at 531). "The People's burden consists of two elements. First, 'the People must demonstrate that the showup was reasonable under the circumstances. Proof that the showup was conducted in close geographic and temporal proximity to the crime will generally satisfy this element of the People's burden' " (*People v Calero*, 105 AD3d 864, 864 [2013], *lv denied* 22 NY3d 1039 [2013], quoting *People v Ortiz*, 90 NY2d at 537). However, "[t]he People also have the burden of producing some evidence relating to the showup itself, in order to demonstrate that the procedure was not unduly suggestive" (*People v Ortiz*, 90 NY2d at 537; *see People v Calero*, 105 AD3d at 864).

The People established that the showup "was conducted in close geographic and temporal proximity to the crime" (*People v Ortiz*, 90 NY2d at 537; *see People v Duuvon*, 77 NY2d 541, 543-544 [1991]). However, they failed to demonstrate that the procedure was not unduly suggestive. The fact that a defendant is handcuffed and in the presence of police officers, standing alone, does not render a showup unduly suggestive (*see People v Calero*, 105 AD3d at 865; *People v Bitz*, 209 AD2d 709, 709-710 [1994]; *People v Doherty*, 198 AD2d 296, 296-297 [1993]), even where "the victim had been told that the police had a suspect in custody" (*People v Gil*, 21 AD3d 1120, 1121 [2005]; *see People v*

*Crumble*, 43 AD3d 953 [2007]). Here, however, the complainant was given two opportunities to identify the same man as the perpetrator. The second time, police officers pulled the defendant into a standing position and escorted him to where the complainant was standing. At that juncture, the defendant was under arrest and Officer Fallace acknowledged that "[t]here was no rush at that point." Therefore, there were no exigent circumstances justifying the procedures employed. The above-described circumstances, when "viewed cumulatively," establish that "the showup identification was unduly suggestive" (*Matter of James T.*, 81 AD3d 838, 839 [2011]). Further, there was no hearing or finding on the question of whether the complainant's in-court identification had an independent source (*see People v James*, 218 AD2d 709 [1995]).

However, we conclude that the erroneous admission of the identification testimony into evidence was harmless beyond a reasonable doubt, since the evidence of the defendant's guilt, without the showup and in-court identification testimony, was overwhelming, and there was no reasonable possibility that the error might have contributed to the defendant's convictions (*see People v Crimmins*, 36 NY2d 230, 237 [1975]).

Further, even without the showup and in-court identification testimony, the verdict of guilt was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Romero*, 7 NY3d 633 [2006]). Indeed, the defendant's guilt was established by overwhelming evidence. The defendant, who matched the complainant's description of the perpetrator, was apprehended in close proximity to the scene of the crime, after demonstrating consciousness of guilt by fleeing from police officers, and engaging in a violent struggle with them (*see People v Harris*, 304 AD2d 839 [2003]). The wad of cash recovered from his person was similar to the amount stolen from the complainant's husband's wallet. In addition, the defendant's cell phone was recovered from the complainant's backyard. Further, the defendant's arrest was authorized, and Officer Collins sustained a physical injury in the course of effecting that arrest (*see People v Lundquist*, 151 AD2d 505 [1989]).

Contrary to the defendant's contention, the People's failure to disclose a particular document to the defense until after the trial does not warrant reversal, since he failed to show that there was "a reasonable possibility that the non-disclosure materially contributed to the result of the trial" (CPL 240.75; *see People v Jingzhi Li*, 104 AD3d 704, 705 [2013]).

The defendant's remaining contentions are without merit. Rivera, J.P., Balkin, Hinds-Radix and Maltese, JJ., concurs.