■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENYATTA JAMES, Also Known as NATE BEANDER, Appellant. [8 NYS3d 400]—

Appeal by the defendant from a judgment of the County Court, Orange County (Berry, J.), rendered January 31, 2012, convicting him of robbery in the first degree and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress identification testimony is granted, and a new trial is ordered.

This is a one-witness identification case, in which the complainant's description of the perpetrator and his clothing to the police immediately after she was robbed is wholly at odds with the physical attributes of the defendant and the clothing he was wearing when he was arrested by the police in the vicinity of the incident a short time later. For the reasons set forth below, we find that the police-arranged showup identification procedure which precipitated the defendant's arrest was unduly suggestive and, thus, the Supreme Court erred in denying that branch of the defendant's omnibus motion which was to suppress identification testimony. Moreover, since the evidence of the defendant's guilt is not overwhelming, the conviction must be reversed and a new trial ordered.

On the evening of July 30, 2010, in Newburgh, Orange County, the 22-year-old complainant called 911 to report that she had been robbed, and described the perpetrator as wearing jeans, and being about 20 years old and the same height as her uncle, who was 6 feet tall. The complainant's report to the first

police officer to respond to the scene, Police Officer Myra Rude, was that a man she had met about an hour earlier, who introduced himself to her as "Manny," had walked her home, and robbed her with a silver knife, taking her purse. According to Officer Rude, the complainant described Manny as a light-skinned black male, wearing a brown-and-white-striped shirt. The defendant is a 33-year-old black male, 5 feet 8 inches tall, who was wearing shorts and carrying a red-and-blue-striped shirt when he was arrested minutes after the incident.

The following testimony was elicited at the pretrial hearing. Upon hearing the complainant's description, Officer Rude immediately dispatched over the radio the description of "Manny" as a light-skinned black male, wearing a brown-and-white-striped shirt. Several minutes after hearing that description over his radio, Detective Aaron Weaver, who was driving near the location, saw the defendant, a black male, who was shirtless but holding a striped shirt in his hand, walking down the street. According to Detective Weaver, the defendant ducked behind a parked vehicle as a marked police vehicle turned onto the street. Police Officer Christopher Flaherty, who was driving the marked police vehicle, along with Detective Weaver and other police personnel who arrived at the scene, then seized the defendant and held him until the complainant could be brought to the location for a showup identification. Two of the officers testified that "a white-striped shirt" was found on the ground near the parked vehicle.

At trial, the shirt that was introduced into evidence, as having been dropped by the defendant near the parked vehicle, was a red-and-blue-striped shirt, not white, nor brown and white.

At the pretrial hearing, Officer Rude further testified that she drove the complainant to the location where the defendant was standing. The defendant was still shirtless and was standing with his hands cuffed behind his back, next to Detective Weaver and at least two other officers, with two or three patrol cars, and other officers, some in plainclothes, some in uniform, in the immediate area. Initially, the complainant hesitated when asked if she could identify the defendant, so Officer Rude pulled the car up about a foot. Next, still before the complainant had made any identification, Officer Flaherty held up the striped shirt the officers had retrieved. The complainant identified the shirt as that of the perpetrator. Then, with the defendant standing between them, Detective Weaver and Officer Flaherty held the shirt over the defendant's chest. Only at that point did the complainant identify the defendant as the person

who had robbed her. The defendant was arrested immediately thereafter.

The County Court denied that branch of the defendant's omnibus motion which was to suppress the identification testimony on the ground that the showup was unduly suggestive.

A showup identification procedure is an inherently suggestive procedure and crosses over to *unduly* suggestive when it creates a "substantial likelihood of misidentification" (*People v Duuvon*, 77 NY2d 541, 544 [1991]). Unnecessary words or actions by the police may aggravate the inherent suggestiveness of a showup, rendering identifications arising therefrom inadmissible (*see People v Ward*, 116 AD3d 989, 992 [2014]). For example, showup identifications have been found to be unduly suggestive in cases where police officers pulled a defendant into a standing position and escorted him to where the complainant was standing, after the complainant initially had failed to identify the defendant (*see id.* at 992), and where police officers shined a spotlight on a defendant while telling a witness to look in the "general direction" of the defendant (*People v Dubinsky*, 289 AD2d 415, 416 [2001]).

Here, the active police involvement in the identification process—the police officers' draping of the shirt over the defendant's chest immediately after the complainant had hesitated in identifying the shirtless defendant as the perpetrator and before she did identify him—renders this showup identification procedure unduly suggestive (*see People v Ward*, 116 AD3d at 992; *People v Dubinsky*, 289 AD2d at 416). The actions taken by the police officers suggested to the complainant that the defendant was the perpetrator. Although the complainant saw the shirtless defendant, she did not identify him as the perpetrator until after the police held the striped shirt up against him. This action by the police is akin to the police having pointed out the defendant as the perpetrator (*see People v Dubinsky*, 289 AD2d at 416; *People v Ward*, 116 AD3d at 992; *James v Marshall*, 2007 WL 3232513, \*12, 2007 US Dist LEXIS 72804, \*32 [ED NY, Oct. 31, 2007, No. 05-CV-1992 (BMC)], citing *Foster v California*, 394 US 440, 443 [1969]).

We do not agree with our dissenting colleague that *People v Dennis* (125 AD2d 325 [1986]) and *People v Mayers* (100 AD2d 558 [1984]) are controlling here. Although the defendant in each of those cases was required to don certain apparel for the purpose of the identification procedure, neither case involves the police officers holding the apparel up against the defendant. Here, the defendant was not directed to don the shirt;

instead, the police, standing on either side of the defendant, draped the shirt over him while asking the complainant to make an identification. Neither *Dennis* nor *Mayers* involved any such role by the police. The affirmative act by the police officers during the identification process, not simply the donning of clothing, renders the showup unduly suggestive. Nor can the undue suggestiveness of the showup in this case be ameliorated on the basis that the police acted at the behest of the complainant (*see e.g. People v McKenzie*, 220 AD2d 228 [1995]). Here, the draping of the shirt was neither requested by, nor undertaken at the behest of, the complainant; it was solely police initiated when the complainant initially failed to identify the defendant.

The Court of Appeals case cited by our dissenting colleague, *People v Brisco* (99 NY2d 596 [2003]), likewise is not dispositive. *Brisco*, like *Dennis* and *Mayers*, involved only a situation where a defendant was required to wear certain clothing during an identification procedure. In *Brisco*, the defendant was required to hold maroon shorts which matched the description of clothing worn by the perpetrator while he was viewed through a window by the victim as he stood in her driveway (*see id.* at 598-599). Under those circumstances, the Court of Appeals determined that the presence of the maroon shorts did not negate the reasonableness of the police action where the victim had already independently identified the defendant, relying upon his height, hair color, and build (*see id.* at 597). More importantly, in *Brisco*, the defendant held the shorts, the police did not; indeed, the Court of Appeals noted that the police took no action nor made any gesture that could influence the victim's identification of the defendant (*see id.* at 597-599).

For these same reasons, *People v Dunbar* (104 AD3d 198 [2013], *affd* 24 NY3d 304 [2014]), a case decided by this Court last year and relied on by the dissent, is important to consider in analyzing the suggestiveness of this showup identification, but for reasons different from those suggested by the dissent. In *Dunbar*, a police officer who was standing next to the defendant was holding a striped shirt and a hat that matched the description of items worn by the perpetrator when that defendant was viewed by the complainant (*see id.* at 215). This Court expressly considered the fact that the police officer was holding the clothing and hat in the vicinity of the defendant during the viewing in evaluating the suggestiveness of the showup in that case (*see id.* at 217). Here, there is no dispute that such facts must be considered in evaluating suggestiveness. Under the circumstances of this case, however, that same analysis—

whether the police officers' actions influenced the identification process so as to render the identification unreliable and inadmissible—yields a different determination from that in *Dunbar*. In *Dunbar*, unlike here, the police did not hold the shirt and hat up against that defendant, nor hold the items at the defendant's waist, nor do anything else to suggest to the complainant that the person whom she was viewing was the perpetrator who possessed the items she had described to the police (*see id.* at 217). Instead, the police officer was standing next to the defendant during the viewing holding the items (*see id.* at 201). The Court took note of the fact that the items were held by the police officer at his own waist level when it determined that, although those circumstances did not render the showup identification so unduly suggestive as to render the identification inadmissible, such facts lessened the reliability, and thus the weight, of the identification of the defendant in that case (*see id.* at 215). Here, under circumstances very similar to those in *Dunbar*, the additional act by the two police officers who were standing on either side of the defendant, of draping a striped shirt over him, puts this matter outside the analytical "lessened reliability" purview of *Dunbar* and squarely within those cases finding undue suggestiveness, rendering the identification inadmissible (*see People v Dubinsky*, 289 AD2d at 416; *People v Ward*, 116 AD3d at 992; *see also United States v Kemper*, 433 F2d 1153 [DC Cir 1970]).

In short, the active role taken by the police officers during the identification procedure suggested to the complainant that the defendant was the perpetrator and, as such, the showup identification should have been suppressed (*see People v Ortiz*, 90 NY2d 533, 537 [1997]).

Since the defendant's constitutional right to due process was violated by the improper showup, "a reversal and a new trial is required unless it can be said beyond a reasonable doubt that the error did not contribute to the conviction" (*People v G.*, 45 NY2d 962, 964 [1978]; *People v Crimmins*, 36 NY2d 230 [1975]). "Such a constitutional error can be harmless only if the evidence of guilt, without reference to the error, is overwhelming, and there is no reasonable possibility that the error might have contributed to the defendant's conviction, such that it is harmless beyond a reasonable doubt" (*People v Dunbar*, 104 AD3d at 214-215; *see People v Crimmins*, 36 NY2d at 237; *People v Harris*, 93 AD3d 58, 71 [2012], *affd* 20 NY3d 912 [2012]).

Without the showup identification testimony, we cannot say that the evidence of guilt in this one-witness identification case

was overwhelming or that the error was harmless beyond a reasonable doubt (see People v Ruffino, 110 AD2d 198, 204 [1985]). This case rests squarely upon the testimony of the complainant, whose memory, according to a member of her family who testified at trial, was "bad on things." The complainant's initial description to police of the perpetrator and his clothing did not match the actual physical characteristics of the defendant and his clothing. The complainant described the perpetrator as wearing a brown-and-white-striped shirt. However, at the showup, when the complainant was shown the shirt seized by the police officers, which they described at the pretrial hearing as a white-striped shirt, she said that she recognized it to be that of the perpetrator. Yet, later at trial, she identified a red-and-blue-striped shirt that was offered into evidence by the People as the one that was worn by the perpetrator. Moreover, although the defendant possessed a "Sawz-all" blade, it was not the "silver knife" described by the complainant, who, when presented with both a photograph of the Sawz-all and then the actual Sawz-all at trial, was unable to identify it as the weapon that had been used against her. In addition, when the defendant was arrested, although he possessed a pack of cigarettes that matched the brand the complainant had said was in her purse, he possessed neither the money nor the personal items which had been taken from the complainant. Indeed, the only real evidence connecting the defendant to the crime is his presence in close geographic and temporal proximity to the crime, his behavior in ducking behind a car when a marked police vehicle turned onto the street, and the complainant's in-court identification.

While the People correctly argue that the complainant had an independent source for her in-court identification based upon her testimony that she spent at least an hour in the perpetrator's company, prior to, and up until, the crime (see People v Williams, 236 AD2d 433, 434 [1997]; People v Paul, 222 AD2d 706, 707 [1995]), in the context of this case, which rested entirely on the identification by a single witness, even with an in-court identification by the complainant of the defendant, it cannot be said that the evidence of guilt was overwhelming, nor that the error was harmless beyond a reasonable doubt (see People v Ruffino, 110 AD2d at 204). Accordingly, the conviction must be reversed and the matter remitted for a new trial.

In light of our determination, we need not reach the defendant's remaining contentions. Dickerson, Cohen and Duffy, JJ., concur.

Dillon, J.P., dissents, and votes to affirm the judgment appealed from, with the following memorandum: I respectfully dissent from my colleagues with respect to the admissibility of the showup identification of the defendant, and vote to affirm the defendant's judgment of conviction.

The facts on appeal are not in dispute. On July 30, 2010, the complainant met a young man at the front stoop of a friend's home in the City of Newburgh, and hung out with him and two other friends for approximately one hour. When the complainant announced that she was going home, the young man asked if he could accompany her. During the 10-minute walk, while it was still daylight, the complainant was robbed at knife point by the young man, and the complainant immediately reported the robbery to her uncle at her home. The police were called and responded to the home promptly. The complainant described the perpetrator to Police Officer Myra Rude as a black male wearing a brown-and-white striped shirt. At roughly the same time, Detective Aaron Weaver received a radio call describing the perpetrator as a black male in a striped shirt, and observed the shirtless defendant in the vicinity of the reported crime walking quickly and carrying a striped shirt. The defendant, upon seeing yet another police officer, Christopher Flaherty, ducked behind a parked vehicle.

The defendant was apprehended and handcuffed by Detective Weaver. When the defendant stood up at the time of his apprehension, he dropped the striped shirt on the ground. During a patdown, Police Officer John Maguire recovered from the defendant's pants pocket a "Sawz-all" with an 8-inch-to-10-inch silver serrated blade.

Officer Rude drove the complainant two blocks to where the defendant was detained, leaving fewer than five minutes after she had first arrived at the complainant's home. While still in daylight, Officer Rude drove her patrol car toward the shirtless defendant and initially stopped the vehicle 28 to 30 feet from him. When the complainant was asked, "is that him?" she initially hesitated, saying that she could not see well, so Officer Rude pulled the car forward another foot. At about the same time, Officer Flaherty held up in front of the defendant the shirt that the defendant had previously dropped, at which point the complainant identified the shirt. Detective Weaver and Officer Flaherty then draped the shirt over the defendant's chest, at which time the complainant identified the defendant as the perpetrator of the armed robbery.

The defendant filed an omnibus motion seeking, inter alia, suppression of the showup identification on the ground that it

was unduly suggestive. After a hearing, the County Court denied suppression.

Showup identification procedures, while disfavored, are permissible in the absence of exigent circumstances when the People demonstrate that it was reasonable under the circumstances, such as by being in close temporal and geographic proximity to the crime, and by not being performed in a manner that is unduly suggestive (see *People v Ortiz*, 90 NY2d 533, 537 [1997]; *People v Ward*, 116 AD3d 989, 991 [2014]; *People v Calero*, 105 AD3d 864 [2013]; *People v Johnson*, 104 AD3d 705, 706 [2013]).

Here, the People established that the showup identification of the defendant occurred within close spatial and temporal proximity to the commission of the crime (see *People v Ortiz*, 90 NY2d at 537; *People v Duuvon*, 77 NY2d 541, 544 [1991]; *Matter of Russell F.*, 118 AD3d 874 [2014]; *People v Guitierres*, 82 AD3d 1116 [2011]). The identification occurred within two blocks of the crime, approximately 10 minutes after its occurrence.

Contrary to the defendant's contention, the identification procedure utilized by the police was not unduly suggestive in the manner of its performance. In *People v Dennis* (125 AD2d 325 [1986]), this Court upheld a showup identification of a handcuffed defendant who had been compelled to don the black jacket and cap that he allegedly wore at the time of a burglary (see *id.* at 326). Similarly, in *People v Mayers* (100 AD2d 558 [1984]), this Court upheld a showup identification of a defendant who had been compelled by police to don a black turtleneck that he allegedly wore at the time of a robbery (see *People v Mayers*, 100 AD2d at 558; *cf. People v Brisco*, 99 NY2d 596, 597 [2003]; *People v Cruz*, 31 AD3d 660, 661 [2006]). In my view, *Dennis* and *Mayers* are controlling, and the holding of clothing in front of a suspect versus requiring a suspect to wear certain clothing is a distinction relied upon by the majority that is without a difference.

Significantly, this Court recently had occasion to pass judgment upon the admissibility of a showup identification where, under facts remarkably similar to those present here, the defendant was surrounded by police officers in close geographic and temporal proximity to the alleged crime, and the police held, at waist height, a blue-and-white-striped shirt that was viewed by the complainant at the exact time of the identification. The case, *People v Dunbar* (104 AD3d 198 [2013], *affd* 24 NY3d 304 [2014]), involved a defendant who allegedly committed a crime while wearing a blue and white striped shirt, and

when he was arrested shortly thereafter in a taxi cab, a blue-and-white-striped shirt was found on the floor of the cab. In *Dunbar*, we held that while the police officer's display of the striped shirt near the defendant and certain unrelated police inconsistencies might affect the reliability, and hence, weight, of the identification, the showup procedure itself was not rendered unduly suggestive by the presence of the striped shirt (*see id.* at 215). Clearly, both here and in *Dunbar*, the police held a striped shirt near each defendant at the time the complainants made the identifications. However, as we concluded in *Dunbar*, that mere fact does not render the procedure unduly suggestive so as to preclude admission of the identification (*see id.* at 217).

As for the remaining issues on appeal, the County Court properly denied the defendant's request for a missing witness charge, as the defendant failed to demonstrate that the witness in question was under the control of the People (*see People v Read*, 97 AD3d 702, 703 [2012]; *cf. People v Gonzalez*, 68 NY2d 424, 431 [1986]).

Moreover, the evidence, viewed in the light most favorable to the prosecution (*see People v Hawkins*, 11 NY3d 484, 493 [2008]; *People v Contes*, 60 NY2d 620, 621 [1983]), was legally sufficient to prove the defendant's guilt beyond a reasonable doubt. Further, upon an independent review pursuant to CPL 470.15 (5), the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]). The discrepancies and other circumstances discussed above, while rendering the evidence less than overwhelming, were properly before the jury for consideration (*see People v Reid*, 82 AD3d 1268, 1268-1269 [2011]; *People v Jean-Marie*, 67 AD3d 704, 705 [2009]; *People v Stroman*, 60 AD3d 708 [2009]).

Accordingly, the judgment of conviction should be affirmed.