OPINION OF THE COURT
Joanne D. Quiñones, J.
Defendant is charged, by way of indictment, with the crimes of assault in the second degree, in violation of Penal Law § 120.05 (3), assault in the third degree, in violation of Penal Law § 120.00 (1), and criminal possession of a weapon, in violation of Penal Law § 265.01 (2).
On August 2, 2017, this court conducted a combined Huntley! Dunaway/Wade hearing with respect to defendant’s motion to suppress an oral statement and two showup identifications that the People had given notice of pursuant to Criminal Procedure Law § 710.30 (1). The sole witness at the hearing was Police Officer Soney Varghese, who testified on behalf of the People. At the end of the testimony, the court heard oral arguments from both sides. The court now makes the following findings of fact and conclusions of law:
Findings of Fact
Police Officer Varghese has been with the New York City Police Department for three years, and is assigned to the 81st Precinct. He testified credibly that on June 26, 2016, he was working, in uniform, with a partner in a marked patrol car, when at approximately 11:05 p.m., while driving southbound on Stuyvesant Avenue at the intersection of Pulaski in Kings County, he was flagged down by a female. The female, who he learned to be M.A., stated that she and her daughter had been stabbed. She described the perpetrator as a black female, approximately five feet, five inches in height with a slim build. She indicated the perpetrator had fled in a grey Infiniti and pointed southbound on Stuyvesant. He asked M.A. to get into his vehicle and to canvass for the perpetrator. Two to three minutes later, he observed a grey Infiniti right in front of him *711 on Lewis and Kosciusko. He asked M.A. if that was the Infiniti and when she answered yes, he stopped the Infiniti. He approached the Infiniti and observed three passengers: a male driver, a male passenger in the front seat, and a female passenger in the back seat. At the time, M.A. was with his partner approximately 10 feet away. He asked the female to step out of the car. The officer observed that the female matched exactly the description that had been provided by M.A. After the female stepped out, Officer Varghese’s partner gave him a thumbs up sign, which was a sign they used to signal that a positive identification had been made. He then placed that female, who he identified at the hearing as defendant, under arrest and called an ambulance for M.A. who was bleeding. M.A. had a cut on her left arm and on the left side of her back. M.A. was taken via ambulance to the original scene of Pulaski and Stuyvesant, while defendant was taken to that same location by Officer Varghese and his partner in their patrol car. During the ride, neither officer spoke to defendant.
Back on the scene there were three ambulances, five to six patrol cars and approximately 15 to 20 uniformed police officers. Three complainants were identified: M.A., T.A. and C.J. Each of the complainants were in separate ambulances, which were parked one in front of the other. Officer Varghese went into each ambulance and asked each complainant to identify defendant. He first approached the ambulance with M.A. Defendant was with his partner, in handcuffs, approximately 10 feet away. He asked M.A. if this was the person who stabbed her and she said yes. He then approached the ambulance T.A. was in. His partner followed with the cuffed defendant, at a distance of approximately five feet. T.A. also identified defendant as the perpetrator and told the officer that she had an argument with defendant at a baby shower on Lafayette Avenue, and that defendant followed her and her mother to Stuyvesant and Pulaski and then stabbed them with a knife. He observed that T.A. had a cut on her left arm, a cut on her chest and a cut underneath her left eye. The officer then approached the ambulance C.J. was in but C.J. was uncooperative and would not answer any of the officer’s questions. He observed that C.J. had a cut on her left arm.
Defendant was then transported to the 81st Precinct for processing by Officer Varghese and his partner. Neither officer spoke to defendant during the four minute ride. At the precinct, defendant complained of stomach pain and stated she was *712 pregnant and an ambulance was called. At approximately 11:40 p.m., defendant left the precinct to go to the hospital. She returned to the precinct at approximately 4:30 a.m. When she returned from the hospital, Officer Varghese provided her with a sandwich and soda. At approximately 5:10 a.m., Officer Varg-hese went to speak to defendant while she was in a holding cell. He read her Miranda warnings from a printed form. After each question defendant answered yes that she understood by writing the word yes after each question on the form. Defendant and the officer then signed the bottom of the form, which was entered into evidence without objection as People’s exhibit 1. Defendant then spoke to the officer and stated she carried the knife for protection, that the complainants were trying to jump her and that she slashed them with the knife because she had no other option. There was no evidence of any promises or threats having been made to defendant or of any guns having been drawn.
Conclusions of Law
1. Dunaway
Here, the police officers were flagged down by M.A. who informed them that she and her daughter had been stabbed. She provided a description of the perpetrator and the direction in which the perpetrator had fled in a grey Infiniti. Two to three minutes and a few blocks later, the officer spotted a grey Infiniti which the complainant identified as the car the perpetrator fled in. Defendant, the sole female passenger in the car, was identified by M.A. as the perpetrator. It is well-settled that the statement of an identified citizen complainant is sufficient to establish probable cause for an arrest (People v Read, 74 AD3d 1245, 1246 [2d Dept 2010]; People v Boykin, 187 AD2d 661, 662 [2d Dept 1992]). Here, the information available to the police established sufficient probable cause for defendant’s arrest. Accordingly, the motion to suppress any evidence as the fruit of an unlawful arrest is denied.
2. Huntley
At a Huntley hearing, the People have the burden of proving beyond a reasonable doubt that the statements made by the defendant were voluntary. It is manifest that a defendant who is in custody may not be interrogated by law enforcement without being advised of his constitutional rights (Miranda v Arizona, 384 US 436 [1966]). “[B]oth the elements of police custody and police interrogation must be present before law *713 enforcement officials constitutionally are obligated to provide the procedural safeguards imposed upon them by Miranda” (People v Huffman, 41 NY2d 29, 33 [1976] [internal quotation marks omitted]).
Here, the record clearly establishes that defendant was orally given her Miranda warnings by Officer Varghese and that she acknowledged that she understood her rights by handwriting the word “yes” on a preprinted form after each right was read to her. She then agreed to speak to the officer. The People have proved beyond a reasonable doubt that defendant’s statement was made after she knowingly, intelligently, and voluntarily waived her Miranda rights (see People v Dunwoody, 89 AD2d 569, 570-571 [2d Dept 1982] [defendant’s affirmative response to final Miranda question “constituted a sufficient, expressly stated waiver of his constitutional rights . . . (and) must be evaluated in the light of the context of the question, which called for an acknowledgment of his understanding of his constitutional rights, . . . and having such understanding, to willingly submit to such interrogation”]). Accordingly, defendant’s motion to suppress her statement on involuntariness grounds is denied.
3. Wade
As to the Wade portion of the hearing, the People gave notice pursuant to CPL 710.30 (1) (b) of two identifications made of defendant. On June 28, 2016, at defendant’s arraignment on the felony complaint, the People served notice of two “point-out” identifications of defendant made to Officer Varg-hese. The notice specified that both identifications were made by T.A. on June 26, 2016 at 23:30 hours at Pulaski Street and Stuyvesant. On August 31, 2016, at defendant’s arraignment on the indictment, the People filed and served their Voluntary Disclosure Form (VDF) which gave notice of two “corporeal non-lineup” identifications of defendant made to Officer Varg-hese on June 26, 2016 at 23:30 hours at Pulaski Street and Stuyvesant Avenue, one by T.A. and the other by M. (first name misspelled) A. On June 14, 2017, almost 10 months after defendant had been arraigned and on the second date the matter had been scheduled for hearing and trial, the People served an amended CPL 710.30 (1) (b) indicating that two “corporeal non-lineup” identifications of defendant had been made to Officer Varghese: one on June 26, 2016 at 23:10 hours at Lewis Avenue and Kosciusko Street by M.A. and the other on June 26, 2016 at 23:30 hours at Pulaski Street and Stuyvesant Avenue by T.A.
*714 On August 2, 2017, prior to the start of the hearing, the defense moved for preclusion of the identification made by M.A. on June 26, 2016 at 23:10 hours at Lewis Avenue and Kosciusko Street on the ground that the People failed to give timely notice as required by CPL 710.30 (2). The People countered that the amended notice merely corrected the time and location of the identification made by complainant M.A., which was made 20 minutes before the time and three to four blocks away from the location designated in the original notice. In support of their application, the People cited People v Ocasio (183 AD2d 921 [2d Dept 1992]). In Ocasio, the hearing court allowed the People to amend their 710.30 notice to replace an incorrect name with a correct one because it did not change the substance of the identification. In affirming the judgment of conviction, the Appellate Division found that because the notice specified the existence of an identification and the name, date, place and manner of the procedure, the hearing court properly granted the People’s motion to amend the notice.
It was this court’s impression that the People only sought to introduce two identifications, specifically two showups, one by M.A. and the other by T.A., and that the People’s amended notice merely corrected the time and location of the identification made by M.A. Based on that understanding, the court denied the preclusion argument as to the identification made by M.A. and indicated that it would conduct a Wade hearing with respect to two identifications, one by M.A. and one by T.A.
After the People rested, the defense renewed its argument for preclusion on the ground that the People had elicited testimony regarding three identifications, namely one made by M.A. at 23:10 hours at Lewis and Kosciusko, a second one by M.A. at 23:30 hours at Pulaski and Stuyvesant, and a third made by T.A. at 23:30 hours at Pulaski and Stuyvesant, but the defense had only been given CPL 710.30 (1) (b) notice of two identifications. In support of this argument, defense counsel cited to People v O’Doherty (70 NY2d 479 [1987]), Matter of Courtney C. (114 AD3d 938 [2d Dept 2014]), and People v Greene (163 Misc 2d 187 [Crim Ct, Kings County 1994]).
In their closing argument at the hearing, the People submitted that the second identification made by M.A. at 23:30 was a confirmatory identification for which no notice was required. They further argued that the exception set forth in CPL 710.30 (3) applies here, in that, by participating in the hearing and moving for suppression, the defense waived any preclusion *715 argument. After the hearing, the People submitted a letter, filed and served on August 11, 2017, in further support of their arguments. With respect to the waiver argument, they rely on People v Kirkland (89 NY2d 903 [1996]), People v Lopez (84 NY2d 425 [1994]) and People v Smalls (145 AD3d 802 [2d Dept 2016]). In support of their argument that no notice was required for the second identification made by M.A., they cite to People v Branigan (207 AD2d 459 [2d Dept 1994]) and People v Torres (223 AD2d 741 [2d Dept 1996]). On August 21, 2017, the defense filed and served a response to the People’s letter.
First, with respect to the waiver issue, the court finds that the cases cited by the People are distinguishable. In Kirkland, the defendant moved to preclude identification evidence on the ground that the People’s CPL 710.30 notice was insufficient. After his motion for preclusion was denied, the defendant moved to suppress the proposed identification testimony and a Wade hearing was held. The trial court denied the defendant’s suppression motion and he was ultimately convicted. The defendant’s conviction was reversed by the Appellate Division on the ground that the CPL 710.30 was deficient. The Court of Appeals reversed the Appellate Division and held that any alleged deficiency in the People’s notice was irrelevant “[s]ince the defendant here moved to suppress the identification testimony and received a full hearing on the fairness of the identification procedure” (Kirkland, 89 NY2d at 905 [emphasis added]).
In the instant matter, unlike in Kirkland, defendant did not move to suppress the identification made by M.A. at 23:10 at Lewis and Kosciusko. Rather, at the start of the hearing, defendant moved for preclusion of this particular identification by M.A. and after the People rested, defendant renewed her motion to preclude this identification (see People v Amparo, 73 NY2d 728, 729 [1988] [the exception set forth in CPL 710.30 (3) is inapplicable where defense only moved for preclusion of evidence on account of late notice]; see also People v McCray, 53 Misc 3d 19, 23 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016] [“While the waiver rule is not triggered by a motion limited to preclude the use of (evidence) on the basis of an untimely notice, where the motion is also to suppress (the evidence) and a hearing on the matter has been held, the defendant has been ‘afforded . . . the same opportunity for a court to pass upon the admissibility of the (evidence) as he would have had if timely notice had been given’ and in such case the waiver rule applies” (citation omitted)]).
*716 The People’s reliance on Lopez is likewise misplaced. In Lopez, the People’s notice was deficient in that there was an indication that the defendant had made oral and written statements and that an identification of the defendant had been made, but no further information about the evidence was provided and no documents were attached. To preserve his argument in Lopez, the defendant did not seek suppression and no hearings were held. The People submit that if defendant wanted to argue preclusion, she should have forgone a Wade hearing. In Lopez, there were no sufficient notices filed pursuant to CPL 710.30 so there was nothing to move to suppress. Here, unlike Lopez, defendant received timely, sufficient notice of two identifications made at 23:30 at Pulaski and Stuyvesant and she thus sought a pretrial suppression hearing with respect to those properly noticed identifications, while arguing that the identification made at 23:10 at Lewis and Kosciusko should be precluded due to untimely notice.
The situation here is more akin to that in People v Bernier (73 NY2d 1006, 1008 [1989]). In Bernier, the defense learned during jury selection that a witness would be identifying the defendant at trial. The defendant moved to preclude the identification testimony on the ground that the People failed to give notice of the identification as required by CPL 710.30 (1) (b). The trial court denied the motion to preclude and conducted a Wade hearing. The Court of Appeals held that because the People failed to present or establish good cause for their failure to give the requisite notice, the preclusion motion should have been granted. It found unpersuasive the People’s claim that the defendant had waived his right to preclusion of the identification by making a suppression motion or participating in a suppression hearing. The Court reasoned “[t]he waiver exception cannot become operative in a case such as this when the defendant clearly moved initially to preclude and lost” (Bernier, 73 NY2d at 1008). Like in Bernier, here defendant initially moved for preclusion, an application that this court denied believing that there were only two and not three identifications that the People sought to introduce.
The court finds equally unpersuasive the People’s contention that they only had to give notice of one of the identifications made by M.A. because the second one was a confirmatory identification. Even if the court were to agree that the second identification by M.A. was a confirmatory one for which CPL 710.30 notice was not required, the fact remains that the *717 People failed to give timely, sufficient notice of the first identification made by M.A. The first identification made by M.A. which resulted from a police-arranged procedure, in that the police asked her to enter their patrol car to canvass the area, was an identification for which the People were required to give CPL 710.30 (1) (b) notice, particularly in a case such as this, where the People contend M.A.’s second identification was merely one that confirmed M.A.’s first identification of defendant outside the grey Infiniti. Here, the only timely notice the People gave regarding an identification by M.A. was for the one they now contend was confirmatory. The notice contained in the People’s VDF, which refers to an identification made by M.A. at 23:30 hours at Pulaski Street and Stuyvesant Avenue, does not give the defense sufficient notice of the first identification, but rather “misinforms” the defense (see Greene, 163 Misc 2d at 193 [People’s notice which listed correct date and witness but specified wrong time and place of identification found insufficient]). The People have not set forth any reason as to why they failed to give the defense accurate notice of the first identification procedure or as to why the inaccuracy in any CPL 710.30 notice was not discovered until nearly a year after the identification was made and nearly 10 months after the defendant’s arraignment on the indictment (Greene at 192-193 [where record was silent as to the cause for the error and trial court found it significant that People did not move to cure the deficiencies in their notice for nearly six months, amendment of the People’s notice was not allowed]).
Accordingly, because the People failed to give timely notice of M.A.’s first identification and have not shown good cause for late notice, defendant’s motion to preclude the identification made by M.A. at 23:10 hours at Lewis and Kosciusko is granted.
As to the properly noticed identifications, specifically the identifications by M.A. and T.A. at 23:30 hours at Pulaski and Stuyvesant, when a defendant challenges an identification procedure as unduly suggestive, the People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness (see People v Coleman, 73 AD3d 1200 [2d Dept 2010]; People v Stephens, 143 AD2d 692 [2d Dept 1988]). “Showup identifications, by their nature suggestive, are strongly disfavored but are permissible if exigent circumstances require immediate identification, or if the suspects are captured at or near the crime scene and can *718 be viewed by the witness immediately” (People v Riley, 70 NY2d 523, 529 [1987] [citations omitted]). A showup must be examined to determine if it was conducted as part of an "unbroken chain of events” or part of an ongoing investigation (People v Duuvon, 77 NY2d 541, 544-545 [1991] [showup found permissible because it was “one unbroken chain of events— crime, escape, pursuit, apprehension and identifications—all within minutes and within a New York City block and a half”]). The identification must also be made in close geographic and temporal proximity to the crime (People v Ortiz, 90 NY2d 533, 537 [1997]).
In the instant case, the People have demonstrated, and defendant has conceded, that the showups were conducted within close geographic and temporal proximity to the location of the incident. Defendant argues, however, that there was no exigency requiring immediate identification given that defendant had already been identified and was under arrest at the time of the showups. The People contend that there were exigent circumstances here as defendant was alleged to have stabbed M.A. and her daughter and where the officer observed injuries on M.A. Nevertheless, even in the absence of exigent circumstances, courts have found that where there exists probable cause for an arrest, there is no constitutional infirmity in a showup identification at the scene provided it is close in time and location to the arrest (see People v Brnja, 50 NY2d 366, 372 [1980]; see also People v Smith, 38 NY2d 882, 883 [1976] [“in addition to exigencies which would exempt prearraignment viewings from the Wade-Gilbert rules, Viewings on the scene and immediately after the commission of the crime’ are similarly exempted”]; People v Cruz, 129 AD3d 119, 124 [1st Dept 2015]). Moreover, in People v Duuvon, the Court of Appeals specifically rejected defense counsel’s argument that “consecutive or cumulative witness identifications of a showup nature should be presumptively forbidden because the initial identification automatically negates the at-the-scene existence of exigent circumstances” (Duuvon, 77 NY2d at 545). The Court reasoned that society’s interest in the police having reasonable assurances that they have arrested or detained the right person “should not be deemed automatically cast aside by the existence of a prior identification in this fast-moving, uninterrupted array of activity” (id. at 545). The court finds that the People have met their burden of production in establishing that the officer’s conduct in taking defendant back to the scene for the showups was reasonable.
*719 The People have similarly met their threshold burden of showing the lack of any undue suggestiveness. That defendant was shown to each complainant while handcuffed with an officer holding her arm while another officer asked is that the person who stabbed you does not render the showup identifications, which were conducted close in time and space to the incident, impermissibly suggestive (see Duuvon, 77 NY2d at 545 [defendant being shown to witness while he was handcuffed in the rear of a police car was suggestive but given the exigent circumstances “was ‘not so unnecessarily suggestive as to create a substantial likelihood of misidentification’ ”]; People v Drake, 141 AD2d 560, 561 [2d Dept 1988] [showups which take place close in time and space to crime scene are “generally not so suggestive as to deny a defendant his right to due process” and question posed to complainant “are these the people that robbed you” was not suggestive as it simply asked for an identification]; People v McNeil, 39 AD3d 206, 209 [1st Dept 2007] [showup conducted in close temporal and spatial proximity to crime not rendered impermissibly suggestive by fact that defendant was cuffed, surrounded by officers including one holding his arm, in vicinity of several police cars with a light shining on him or by an officer’s comment that they had a “possible” and complainant was asked whether it was him or wasn’t him who committed the robbery]).
Accordingly, defendant’s motion to suppress the two properly noticed identifications, specifically the showup identifications made by M.A. and T.A. at 23:30 at Pulaski Street and Stuyvesant Avenue, is denied.