[845 NYS2d 315]

The People of the State of New York, Respondent, v Bobby
Austin, Appellant.

First Department, November 15, 2007

### APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society,* New York City (*David Crow* of counsel), and *Cahill Gordon & Reindel LLP,* New York City (*Kathleen Tighe Sullivan* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney,* New York City (*Mark Dwyer* of counsel), for respondent.

### OPINION OF THE COURT

ANDRIAS, J.P.

On this appeal, where defendant was convicted, after a jury trial, of robbery in the second degree and grand larceny in the fourth degree, based solely on the uncorroborated eyewitness testimony of the complaining witness, the issue presented is whether the trial court abused its discretion when it denied his pretrial motion to admit expert testimony on eyewitness identification. We find that, on the facts of this case, there was a sound exercise of discretion.

In denying defendant's pretrial motion for permission to introduce expert testimony on the psychological factors of memory and perception that may affect the accuracy of eyewitness identification at trial, the court (Micki A. Scherer, J.) considered the following information:

> "The People allege that at 9:12 P.M. on September 7, 2005 in the vicinity of 355 W. 121st Street, the unarmed defendant knocked a cell phone from the complainant's hand and punched the complainant in the face. They further allege that after causing the complainant to fall to the ground, the defendant retrieved the cell phone and fled the location. The

complainant's testimony before the grand jury is consistent with these allegations.

"In his testimony before the grand jury, the complainant further detailed that while walking home from the store, someone approached him from behind. He states that he turned and looked right in the face of this person who he later identified as the defendant. The complainant testified that after he was struck by the defendant as described above, he chased the defendant for two city blocks. Having failed to apprehend him, the complainant walked to the police station and filed a report which included a description of his assailant. Additionally, the complainant testified that at approximately 6:00 P.M. on September 12, 2005 in the vicinity of 288 St. Nicholas Avenue, he observed his assailant. The complainant testified that he called the police, and upon their arrival, he reiterated the events of the prior date and pointed out the defendant. He further indicated that the defendant was thereafter apprehended in his presence.

"At the time of his arrest, it is conceded that the defendant was not in the possession of the complainant's cell phone or any other property connecting him to the crime and the sole evidence against him was the identification by the complainant. It is also undisputed that the defendant is an African-American male and the complainant is an Asian-American male.

"In their response the People noted the complaint report described the perpetrator as a male black with a medium complexion, approximately 20 years old, approximately 5'9" tall, weighing approximately 165 lbs., with brown eyes and short black hair. They maintain that the defendant is a male black with medium complexion, 19 years old at the time of the incident, approximately 5'7" tall, weighing approximately 160 lbs., with brown eyes and tightly braided hair."

On appeal, defendant argues that the proffered testimony on eyewitness identification was directly relevant to the facts of this case, particularly with regard to the weak relationship between an eyewitness's confidence and the accuracy of his

identification, i.e., that people very confident in their recollections are often wrong; the fact that people are generally more accurate in identifying people of their own ethnicity; and the fact that a high degree of stress can make a witness less likely to remember an event well.

The People concede that the proffered expert testimony regarding the "witness confidence" factor recognized by the Court of Appeals in *People v LeGrand* (8 NY3d 449, 458 [2007]) might have been relevant to the facts of this case where the robbery victim testified at trial that he had no doubt that defendant was the man who robbed him. Defendant contends that expert testimony about so-called "confidence malleability" could have helped the jury in this case to assess the significance of the increase in the complainant's confidence from the date of defendant's arrest, when the complainant told his wife he was "pretty sure this is the guy," to the time of trial, when he testified that he had "no doubt" defendant was the one who robbed him. However, as the People point out, the sole basis for defendant's appellate argument in this regard focuses on the complainant's trial testimony on direct examination that when he spotted defendant on the street five days after the robbery he called his wife from a public phone and told her, "I'm pretty sure this is the guy." However, at the time of defendant's pretrial motion, neither the parties nor the court could have anticipated such arguably equivocal testimony (the full statement was, "I'm pretty sure this is the guy. I saw his face again, I saw his face before, this is the guy, I'm going to call 911 . . . and so probably it would be a few minutes before I'm home.") Nor could they have anticipated the complainant's unequivocal response to the prosecutor's direct examination at trial ("Q Is there any doubt that the man you saw on September 12, 2005 was the man who assaulted you and took your phone on September 7, 2005? A No. Q Any doubt? A No"), which obviously was not before the motion court when it decided defendant's pretrial omnibus motion.

Perhaps the better practice would have been to reserve decision or deny the motion with leave to renew during presentation of the People's case, at which time both the defense and the court would have been in a better position to consider the relevance of any expert testimony proffered on the effect of various factors on the reliability of eyewitness identification. Nevertheless, based upon the pretrial proffer made by defendant and the information available at the time, the court found

that defendant failed to explain in his moving papers why expert testimony would be necessary in light of the general jury charge given in one-witness identification cases. Additionally, the court noted, defendant would have ample opportunity to cross-examine the witness in this regard.

However, despite the complainant's "pretty sure" testimony on direct examination, the defense never pursued the issue on cross-examination, focusing instead on the witness's opportunity to observe his assailant and certain discrepancies in the description he gave to the police, and it never requested that the trial court reconsider the relevance of expert testimony on the issue of "witness confidence" (see People v Lee, 96 NY2d 157, 163 [2001] [where the motion was considered during the People's case-in-chief]). Nor was there any request to supplement the court's charge on eyewitness identification, or any objection voiced to the court's charge to the jury that it must give particular attention and care to the identifying witness's testimony regarding all the circumstances surrounding his observation of the perpetrator, including the witness's opportunity to observe the perpetrator, the lighting conditions, the length of time he observed his assailant, the distance between him and the perpetrator, any distinctive features or clothing, and the accuracy of any description the complainant gave to police officers after the event, all matters within the ken of the typical juror. In short, defendant failed to establish at any point the relevance of the proffered testimony to the particular facts of this case.

In People v LeGrand, the hearing court recognized the importance to the defense of expert testimony on the reliability of the eyewitness identifications and found that the proposed testimony was relevant to the issues and facts of the case. However, the court refused to admit such evidence, which it concluded was based on novel scientific principles, theories or techniques that had not yet been generally accepted by the relevant scientific community. This Court affirmed, but the Court of Appeals disagreed and held that the defendant had met his burden under Frye v United States (293 F 1013 [DC Cir 1923]) as to three of the four factors proffered that might influence reliability: the correlation between confidence and accuracy of identification, the effect of postevent information on accuracy of identification and confidence malleability. In so holding, however, the Court noted that, although the expert testimony should have been admitted in light of the facts in that case, the hearing court would still have been obliged to exercise its discre-

tion with regard to the relevance and scope of such expert testimony. "Plainly, not all categories of such testimony are applicable or relevant in every case. In that event, admissibility would rest within the trial court's sound discretion" (*id.* at 459).

The facts in *LeGrand* differ from those presented here. There, a few days after a livery cab driver was stabbed to death, four people who had witnessed the attack collaborated on a composite sketch of the assailant. Two years later, the defendant was identified as a possible suspect after a detective who arrested him for an unrelated burglary concluded that he resembled the 1991 composite sketch; however, because the police were unable to find any of the witnesses to the stabbing, the case remained dormant until 1998 when the defendant was again arrested for burglary in the same precinct and the police again concluded that he resembled the composite sketch. This time the police located the four original witnesses as well as an additional witness who was not identified until 1998. One of the witnesses identified the defendant as the killer in a photo array and a lineup. Two other witnesses were unable to make a positive identification from the photo array, but one of them picked out the defendant's photo as a "close, if not exact" match (8 NY3d at 453). A third witness described the defendant's photo as "similar" to the assailant and the two remaining witnesses were unable to identify the defendant from the photo array (*id.*). As here, there was no forensic or other physical evidence connecting the defendant to the crime (*id.* at 452-453).

Here, on the other hand, as the hearing court noted, the People alleged that the complainant was confronted by an unarmed perpetrator in a well-lit area. The complainant had the opportunity to observe his assailant at close range and chased him for two blocks before proceeding to the local police station to report the crime and give a relatively detailed description of his assailant. The complainant never viewed a photo array or lineup. Instead, five days later, after spotting his alleged assailant on the street, he called the police and pointed out defendant to them.

In a decision issued more than a year before the Court of Appeals decision in *LeGrand*, the hearing court, while finding defendant's offer of proof unsatisfactory, summarily refused to admit the proffered testimony, not solely because it was based on novel and not generally accepted scientific principles, but because defendant's motion lacked any correlation between the

proffered testimony and the facts of this case to demonstrate its relevance.

> "[A] court's exercise of discretion in a case like this depends in large part on whether the 'specialized knowledge' of the expert can give jurors more perspective than they get from 'their day-to-day experience, their common observation and their knowledge.' In other words, could the expert tell the jury something significant that jurors would not ordinarily be expected to know already?" (*People v Young*, 7 NY3d 40, 45 [2006] [citation omitted], explaining *Lee*.)

In this case we think the answer is no. Thus, given the facts and circumstances of this case, the trial court properly exercised its discretion in denying defendant's motion.

Finally, defendant's claim that the court failed to provide counsel with notice of the contents of a jury note and an opportunity to be heard on the court's response (*see People v O'Rama*, 78 NY2d 270 [1991]) is belied by the record. After responding to the note, the court placed on the record the fact that, before the response, there had been an off-the-record colloquy with counsel concerning the nature of the note and the court's intended response, whereupon defense counsel verified that this was correct. A presumption of regularity attaches to all criminal proceedings and may be overcome only by "substantial evidence" (*People v Velasquez*, 1 NY3d 44, 48 [2003]).

Moreover, defendant's present challenge to the substance of the court's response is unpreserved and we decline to review it in the interest of justice. Were we to review this claim, we would reject it. The instruction was a neutral encouragement to continue deliberating (*see e.g. People v Ford*, 78 NY2d 878, 880 [1991]).

Accordingly, the judgment of the Supreme Court, New York County (Micki A. Scherer, J., on expert witness motion; William A. Wetzel, J., at jury trial and sentencing), rendered March 6, 2006, convicting defendant of robbery in the second degree and grand larceny in the fourth degree, and sentencing him to an aggregate term of five years' imprisonment, should be affirmed.

BUCKLEY, CATTERSON, MALONE and KAVANAGH, JJ., concur.

Judgment, Supreme Court, New York County, rendered March 6, 2006, affirmed.