■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY ALLEN, Appellant. [861 NYS2d 775]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Buchter, J.), rendered February 28, 2006, convicting him of robbery in the first degree (two counts), attempted robbery in the first degree (two counts), robbery in the second degree, and attempted robbery in the second degree

(three counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

On March 10, 2004 two armed men held up a barber shop in Queens. Although both men wore masks, the shorter of the two wore a mask that was open from the top of his upper lip to his eyebrows. When a police officer responded to the crime scene, one of the witnesses, who was also a victim of the crime, told the officer that he recognized the shorter man whom he knew as "Junior or J.R." This witness was taken to a police precinct where he was shown a 180-page "mug book," and he identified the defendant as one of the robbers. On the same day, this witness also identified the defendant from a photographic array as the shorter of the two perpetrators of the crime. Four months later, two of the four robbery victims, including this witness, identified the defendant in a lineup.

At a pretrial hearing, the trial court precluded the defendant from presenting at trial expert testimony on the reliability of eyewitness identifications. At trial, the witness who identified the defendant from the photographic array testified, inter alia, that he recognized the shorter man's voice and body type as being that of the defendant, whom he had seen in the neighborhood approximately once a week during the year preceding the robbery.

The defendant argues, among other things, that the trial court improvidently exercised its discretion in denying his request to introduce expert testimony regarding eyewitness identification reliability. "As a general rule, the admissibility . . . of expert testimony lie[s] primarily in the sound discretion of the trial court [and] '[i]t is for the trial court . . . to determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefitted by the specialized knowledge of an expert witness' " (*People v Lee,* 96 NY2d 157, 162 [2001], quoting *People v Cronin,* 60 NY2d 430, 433 [1983]). Recently, in the case of *People v LeGrand* (8 NY3d 449, 452 [2007]), the Court of Appeals held that "where the case turns on the accuracy of eyewitness identifications and there is little or no corroborating evidence connecting the defendant to the crime, it is an abuse of discretion for a trial court to exclude expert testimony on the reliability of eyewitness identifications if that testimony is (1) relevant to the witness's identification of defendant, (2) based on principles that are generally accepted

within the relevant scientific community, (3) proffered by a qualified expert and (4) on a topic beyond the ken of the average juror."

In the case at bar, there was corroborating evidence of the defendant's guilt unrelated to his description by two eyewitnesses. First, one of the eyewitnesses who gave a physical description of the defendant also provided the defendant's nicknames "Junior [and] J.R." to the police. These nicknames were confirmed by the defendant upon his arrest when he provided the arresting detective with those same names and explained that they were his nicknames. Second, the defendant's guilt was further established by his own statements and conduct when the police attempted to place him in a lineup. The defendant, while being seated in a lineup the day after his arrest, refused to cooperate unless all of the participants wore masks and covered their faces. The defendant's knowledge that the perpetrator wore a mask, despite the fact that the police had not told the defendant that he was accused of committing the robbery wearing a mask, was evidence of his participation in the crime.

Moreover, the facts of this case are sufficiently distinct from those of *People v LeGrand* (*id.*) that we conclude that the Supreme Court did not err in denying the defendant's request to adduce expert testimony regarding the reliability of eyewitness identification. For example, we note that in *LeGrand*, the defendant's "identity" was initially derived from a composite sketch based upon information from witnesses to the murder, and it was not until two years after the crime that an officer first concluded that this sketch resembled the defendant who had been arrested for an unrelated burglary. In addition, the witnesses in *LeGrand* did not view a photographic array and lineup until seven years after the crime had been committed, and at that point, only one of the five witnesses was able to positively identify the defendant.

Unlike the facts in *People v LeGrand* (*id.*), here the two witnesses who identified the defendant were victims of the crime and thus had a direct encounter with the perpetrator, as opposed to merely observing a crime against a third party. One of the witnesses identified the defendant from a photographic array on the very same day that the robbery took place, thus virtually eliminating the question of whether this identification may have been based upon faulty memory, as was a concern in the *LeGrand* case. In addition, this same witness was always positive that the defendant was one of the perpetrators of the robbery (*compare People v Austin*, 46 AD3d 195 [2007]). More-

over, the defendant's lineup, whereat two of the four victims of the crime positively identified the defendant as one of the perpetrators, took place only four months after the robbery occurred.

Finally, and perhaps most importantly, prior to viewing the photographic array, the identifying witness told the officer who responded to the crime scene that he "recognized" the defendant and that his nickname was "Junior" or "J.R." This witness also testified at trial that he recognized the defendant's voice and body type; that he identified him to the police as Junior or J.R.; and that he recalled seeing the defendant in the neighborhood about once a week from September 2003 to March 2004, with the robbery having taken place on March 10, 2004 (*cf. People v LeGrand,* 8 NY3d 449 [2007]; *People v Gonzalez,* 47 AD3d 831 [2008]).

Contrary to the defendant's contention, there is no evidence that the lineup was unduly suggestive (*see People v Jackson,* 98 NY2d 555, 558-559 [2002]; *People v Chipp,* 75 NY2d 327, 335 [1990], *cert denied* 498 US 833 [1990]; *see also People v Rodriguez,* 192 AD2d 731 [1993]; *People v Coico,* 156 AD2d 578 [1989]).

The defendant's contention that the court's charge on the issue of reasonable doubt constituted reversible error is unpreserved for appellate review.

The defendant's remaining contentions are without merit. Rivera, J.P., Santucci, Dickerson and Belen, JJ., concur.