People v Carmona (2020 NY Slip Op 03672)





People v Carmona


2020 NY Slip Op 03672


Decided on July 1, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 1, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
ROBERT J. MILLER
JOSEPH J. MALTESE
BETSY BARROS, JJ.


2014-02094
 (Ind. No. 8420/11)

[*1]The People of the State of New York, respondent,
v
Vincent Carmona, appellant.


Paul Skip Laisure, New York, NY (Rebecca J. Gannon and Caitlin Halpern of counsel), for appellant, and appellant pro se.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Solomon Neubort of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (John G. Ingram, J.), rendered March 3, 2014, convicting him of attempted murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of that branch of the defendant's omnibus motion which was to suppress identification testimony.
ORDERED that the judgment is affirmed.
The defendant was charged with, inter alia, attempted murder in the second degree and criminal possession of a weapon in the second degree in connection with the shooting of the complainant, which occurred outside of the complainant's apartment building during the early morning of September 18, 2011. During a New York City Police Department (hereinafter NYPD) investigation of the shooting, the complainant, while being questioned by a detective at the hospital, identified "Chulo" as having shot him. On September 20 and 30, 2011, the complainant identified the defendant as the shooter from two single-photo displays shown to him by NYPD Detective Johnson. Thereafter, on May 9, 2013, subsequent to the defendant's arrest, the complainant identified the defendant in a double-blind sequential lineup at which the defendant's counsel was present.
Prior to trial, the defendant moved, inter alia, to suppress identification testimony, and the People consented to a Wade hearing (see United States v Wade, 388 US 218) on the issue of the suggestiveness of the lineup procedure. After the Wade hearing, the Supreme Court determined that the lineup procedure was not unduly suggestive and denied that branch of the defendant's omnibus motion which was to suppress identification testimony. The defendant then requested a Wade hearing regarding the earlier single-photograph identifications made by the complainant. When the People responded that the complainant and the defendant were well known to each other, the defendant requested a Rodriguez hearing (see People v Rodriguez, 79 NY2d 445). The court denied the defendant's request, relying on the People's assurances that the complainant was familiar with the defendant. However, the court stated that, if it became clear at the trial that the defendant was not well known to the complainant, an "appropriate remedy" would be fashioned.
During the jury trial, after the complainant testified, the defendant renewed his request for a Rodriguez hearing. The Supreme Court denied the application. Following the trial, the defendant was convicted of attempted murder in the second degree and criminal possession of a weapon in the second degree. The defendant appeals, and we affirm.
The defendant's contention, made in his pro se supplemental brief, that the evidence was legally insufficient to establish his identity as the shooter is unpreserved for appellate review (see CPL 470.05[2]; People v Hawkins, 11 NY3d 484, 492). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that the evidence was legally sufficient to establish his identity as the shooter beyond a reasonable doubt. The complainant's testimony was not incredible as a matter of law, since it was not "manifestly untrue, physically impossible, contrary to experience, or self-contradictory" (People v Guzman, 134 AD3d 852, 853; see People v Calabria, 3 NY3d 80, 82).
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633). Contrary to the defendant's contention, the complainant's testimony that, following the first shot, he fell to the ground on his back, and was looking up at the shooter as the remaining shots were fired, was not undermined by medical evidence that certain shots entered from the back of the complainant's arm and legs. The complainant "never equivocated about [his] core testimony identifying [the] defendant as the person who shot [him]" (People v Villa, 174 AD3d 438, 438-439), and the other evidence confirmed aspects of the complainant's testimony.
The Supreme Court erred in relying on the People's mere assurances of familiarity in denying the defendant's pretrial request for a Rodriguez hearing (see People v Rodriguez, 79 NY2d at 451; People v Coleman, 60 AD3d 1079, 1080; People v Bryan, 206 AD2d 434, 435). Nevertheless, a hearing with regard to the single-photograph identifications made by the complainant soon after the shooting was ultimately unnecessary inasmuch as the complainant's trial testimony demonstrated that he was sufficiently familiar with the defendant, whom he knew and referred to by the defendant's street name,"Chulo," such that the complainant's identification of the defendant from the photo display was merely confirmatory (see People v Locenitt, 157 AD3d 905, 907; People v Jackson, 151 AD3d 746, 746; see also People v Collins, 60 NY2d 214). In addition to the complainant identifying the defendant from the photographs shown to him by the detective at the hospital shortly after the shooting as "Chulo," telephone conversations between the defendant and his family members recorded while the defendant was incarcerated pretrial at Rikers Island Correctional Facility confirmed that the defendant was referred to as "Chulo." Further, the complainant testified at trial that he knew the defendant from the neighborhood and had contact with him at least once a week over the previous three to four years. The complainant also identified the defendant's acquaintances who were with the defendant at the time of the shooting, which included a family member of the defendant who was present in court at the time of trial. " When a crime has been committed by a . . . long-time acquaintance of a witness there is little or no risk that comments by the police, however suggestive, will lead the witness to identify the wrong person'" (People v Rodriguez, 79 NY2d at 450 [emphasis omitted], quoting People v Collins, 60 NY2d at 219). Any suggestiveness of the initial photo identification procedure or the purported taint thereafter was not a concern since " the protagonists are known to one another'" (People v Rodriguez, 79 NY2d at 449 [emphasis omitted], quoting People v Gissendanner, 48 NY2d 543, 552; see People v Tas, 51 NY2d 915).
The defendant's contention, made in his pro se supplemental brief, that the Supreme Court deprived him of his constitutional right to compulsory process when the court declined to adjourn the trial until Detective Johnson, who had suffered a serious and debilitating injury, was available to testify is unpreserved for appellate review. In any event, this contention is without merit since the court providently exercised its discretion in denying, as premature, the defendant's request [*2]for an adjournment of the trial to attempt to procure the detective as a witness for possible rebuttal testimony related to the complainant's testimony (see People v Begg, 86 AD2d 693, 694). Moreover, following the complainant's testimony, the defendant failed to renew this request (see People v Cruz, 171 AD2d 607, 609) and did not identify any testimony by the complainant which the detective could have rebutted.
The defendant's contention, made in his pro se supplemental brief, that portions of the recordings of his phone calls from Rikers Island Correctional Facility which the Supreme Court allowed to be admitted into evidence should have been excluded at trial since the probative value of those portions of the phone calls was substantially outweighed by the prejudice of introducing that evidence is without merit. The court providently exercised its discretion in permitting admission of only those portions of the recordings in which the defendant's family referred to the defendant as Chulo (see People v Chrisostome, 167 AD3d 644).
AUSTIN, J.P., MILLER and MALTESE, JJ., concur.
BARROS, J., dissents, and votes to remit the matter to the Supreme Court, Kings County, to hear and report on that branch of the defendant's omnibus motion which was to suppress identification testimony and, more particularly, whether the identification procedures were merely confirmatory in nature; and, if not determined to be merely confirmatory, whether the single-photograph identification procedures were unduly suggestive; and, if determined to be unduly suggestive, whether the taint of those procedures infected the subsequent lineup identification procedure; and to hold the appeal in abeyance pending receipt of the Supreme Court's report.
I agree with my colleagues in the majority that the Supreme Court erred in relying upon the People's mere assurances of familiarity in denying the defendant's request for a Rodriguez hearing (see People v Rodriguez, 79 NY2d 445). However, in relying solely upon the complainant's trial testimony as the basis for its refusal to order a posttrial Rodriguez hearing, the majority contravenes clear and binding precedent from the Court of Appeals (see id.).
In the early morning of September 18, 2011, the complainant was standing outside his apartment building when he was approached by three people. One of the individuals pulled out a gun and shot the complainant in the legs and in the head. On September 20, 2011, New York City Police Department Detective Johnson showed the complainant a single photograph of the defendant, and the complainant identified the defendant as the shooter. Ten days later, on September 30, 2011, Detective Johnson again showed the complainant a single photograph of the defendant, and again the complainant identified the defendant as the shooter. On May 9, 2013, following the defendant's arrest, the complainant again identified the defendant in a double-blind sequential lineup.
At a Wade hearing (see United States v Wade, 388 US 218, 229), the defendant argued that the lineup and in-court identifications should be suppressed because the People did not produce Detective Johnson, and thus, could not establish that the lineup and in-court identifications were not tainted by Detective Johnson having displayed single photographs of the defendant on two prior occasions.
Arguing against holding a Wade hearing on the suggestiveness of the single photograph displays, the prosecutor contended that the complainant and the defendant were well-known to each other, and therefore, all of the identification procedures were merely confirmatory in nature. Defense counsel then asserted that the defendant denied knowing the victim, and requested a hearing pursuant to People v Rodriguez (79 NY2d 445) to test the People's claim of familiarity between the complainant and the defendant. The Supreme Court denied the defendant's request for a Rodriguez hearing, but stated that, if it became clear at trial that the defendant was not well known to the victim, then it would fashion an "appropriate remedy." The court ruled that the lineup procedure itself was not unduly suggestive, but did not pass on whether the single-photograph displays tainted the lineup identification. The court reasoned, inter alia, that "[t]he People have assured the [c]ourt that the complainant knows the defendant very well."
At trial, the complainant identified the defendant as the shooter, testifying that he knew the defendant from seeing him around the neighborhood on a weekly basis over the previous three to four years. The defendant renewed his request for a Rodriguez hearing to test this claim of familiarity, and the Supreme Court denied the request.
"A court's invocation of the confirmatory identification' exception is . . . tantamount to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is little or no risk' that police suggestion could lead to a misidentification" (People v Rodriguez, 79 NY2d at 450, quoting People v Collins, 60 NY2d 214, 219). "In effect, it is a ruling that however suggestive or unfair the identification procedure might be, there is virtually no possibility that the witness could misidentify the defendant" (People v Rodriguez, 79 NY2d at 450). "The People bear the burden in any instance they claim that a citizen identification procedure was merely confirmatory,'" that is, that the "protagonists are known to one another, or where . . . there is no mutual relationship, that the witness knows defendant so well as to be impervious to police suggestion" (id. at 452; see People v Coleman, 60 AD3d 1079, 1080).
Critically, in Rodriguez, the Court of Appeals held that "prior familiarity should not be resolved at trial in the first instance" (People v Rodriguez, 79 NY2d at 452; see CPL 710.20[6]), and explained its reasoning as follows: "The Legislature mandates pretrial resolution of the admissibility of identification testimony where it is alleged that an improper procedure occurred (see, CPL 710.20[6]; 710.60). Moreover, when the defendant's theory at trial is mistaken identity, the exploration of prior familiarity on cross-examination may actually bolster the People's case" (People v Rodriguez, 79 NY2d at 452). Precluding the opportunity for the defendant to explore the complainant's claim of prior familiarity before trial represents a clear violation of Rodriguez.
To remedy the error in failing to hold a pretrial hearing on the issue of prior familiarity, the Court of Appeals, in Rodriguez, remitted the matter to the Supreme Court for a posttrial hearing (see id. at 453). This Court's jurisprudence—until now—has been to follow that procedure, and hold the appeal in abeyance and remit the matter for a posttrial Rodriguez hearing (see People v Coleman, 60 AD3d 1079; People v Redding, 47 AD3d 953; People v Thomas, 225 AD2d 641; People v Thornton, 222 AD2d 537; People v Cinatus, 188 AD2d 481).
Nothing in the trial record justifies a departure from that protocol. Indeed, the facts are analogous to Rodriguez. In Rodriguez, the complainant, a grocery store clerk, testified before a grand jury that he had seen the defendant "at least four dozen times" as a customer in his grocery store (see People v Rodriguez, 79 NY2d at 447). Here, the complainant testified at trial that he saw the defendant around the neighborhood on a weekly basis over a period of three to four years, and that he knew the defendant as "Chulo." As in Rodriguez, without more information, there is no sufficient basis for ruling that the complainant's familiarity with the defendant was such as to be impervious to police suggestion (see id. at 451). At a Rodriguez hearing, the Supreme Court would be able to consider "factors such as the number of times [the complainant] viewed defendant prior to the crime, the duration and nature of the encounters, the setting, the period of time over which the viewings occurred, the time elapsed between the crime and the previous viewings, and whether the two had any conversations" (id.).
The majority places much emphasis on the complainant's trial testimony that he knew the perpetrator as "Chulo," and that in recorded telephone calls, the defendant's family members referred to the defendant as "Chulo." However, the record does not support a conclusion that use of the Spanish nickname "Chulo" is so unique as to make that evidence of familiarity so conclusive on identification as to vitiate the need for a Rodriguez hearing.[FN1]
In my view, this Court is constrained to order a posttrial Rodriguez hearing. If, after the posttrial Rodriguez hearing, the Supreme Court concludes that the People failed to meet their burden in showing that the identification procedures were "merely confirmatory," then it must conduct a Wade hearing to determine whether the two single-photograph identification procedures were unduly suggestive, and, if so, whether they tainted the subsequent lineup and in-court identifications. A single-photograph identification procedure "carries the risk of undue suggestiveness and entitles a defendant to a Wade hearing" (People v Marshall, 26 NY3d 495, 506; see People v Rodriguez, 79 NY2d at 453; Matter of James H., 34 NY2d 814, 816).
Accordingly, I vote to hold the appeal in abeyance for a posttrial hearing with respect to these issues (see People v Rodriguez, 79 NY2d at 453; People v Coleman, 60 AD3d 1079; People v Redding, 47 AD3d 953; People v Thornton, 222 AD2d at 539), and to decide no other issues at this time.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: "Chulo" is a common Spanish slang term of endearment referring to someone as, inter alia, good-looking, adorable, or cute (see urbandictionary.com/define/php?term=chulo [last accessed May 28, 2020]; en.wiktionary.org/wiki/chulo [last accessed May 27, 2020]).