People v Jones (2022 NY Slip Op 06942)

People v Jones

2022 NY Slip Op 06942

Decided on December 7, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 7, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
REINALDO E. RIVERA
JOSEPH A. ZAYAS
DEBORAH A. DOWLING, JJ.

2016-10305
 (Ind. No. 7152/14)

[*1]The People of the State of New York, respondent,
v
Justice Jones, appellant.

Patricia Pazner, New York, NY (Alice Cullina of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Avshalom Yotam of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (William Harrington, J.), rendered September 12, 2016, convicting him of robbery in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress identification evidence and his statements to law enforcement officials.
ORDERED that the judgment is affirmed.
Contrary to the defendant's contention, the integrity of the grand jury proceeding was not impaired by the failure of the prosecution to elicit certain additional testimony from the complainant or to present other evidence that the defendant now claims to be favorable to the defense. The prosecution was under no obligation to elicit the certain additional testimony or present the other evidence in question, as such evidence was not entirely exculpatory and would not have materially influenced the grand jury's investigation (see People v Baez, 202 AD3d 1102, 1104; People v Nunez-Garcia, 178 AD3d 1087, 1089; People v Arevalo, 172 AD3d 891, 892).
The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress identification evidence. Although the People did not produce all of the photographs displayed through the photo manager system at the suppression hearing, the People nevertheless sufficiently rebutted the presumption of suggestiveness through the testimony of a police detective detailing the manner in which the photo manager system was employed to arrive at the identification (see People v Holley, 26 NY3d 514, 521-522; People v Castello, 176 AD3d 730, 732-733; People v Busano, 141 AD3d 538). In addition, the complainant identified the defendant in a lineup (see People v Castello, 176 AD3d at 733). The defendant failed to sustain his ultimate burden of proving that the photo identification procedure was unduly suggestive (see People v Legall, 176 AD3d 867, 868; People v Busano, 141 AD3d at 540). Moreover, it cannot be said that the disparities in age, height, and skin tone between the defendant and the other participants in the police lineup were so apparent as to "orient the viewer toward the defendant as a perpetrator of the crimes charged" (People v Dorcil, 194 AD3d 1069, 1070 [internal quotation marks omitted]; see People v Gough, 203 AD3d 747, 750; People v Brown, 180 AD3d 1063, 1064).
The Supreme Court also properly denied that branch of the defendant's omnibus motion which was to suppress the defendant's statements to law enforcement officials. Contrary to the defendant's contention, the detective's suppression hearing testimony that the defendant waived his Miranda rights (see Miranda v Arizona, 384 US 436) and gave inculpatory statements was not incredible, patently tailored to nullify constitutional objections, or otherwise unworthy of belief (see People v Frazier, 140 AD3d 977, 978; People v Daniels, 190 AD2d 858, 858).
Contrary to the People's argument, the defendant's contention that the evidence was legally insufficient to support his conviction because the complainant's testimony was patently unreliable is preserved for appellate review (see CPL 470.05[2]; People v De Bour, 40 NY2d 210, 215; People v Moore, 204 AD3d 701). Nevertheless, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's identity as the perpetrator of the robbery (see People v Murphy, 197 AD3d 1257; People v Garcia, 194 AD3d 956, 958; People v Carmona, 185 AD3d 600, 601, mod 37 NY3d 1016; People v Ulysse, 25 AD3d 814). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The Supreme Court providently exercised its discretion in denying the defendant's renewed application to present, at trial, the testimony of Professor Steven Penrod as an expert witness with respect to cross-racial identifications. "[W]here the case turns on the accuracy of eyewitness identifications and there is little or no corroborating evidence connecting the defendant to the crime, it is an abuse of discretion for a trial court to exclude expert testimony on the reliability of eyewitness identifications if that testimony is (1) relevant to the witness's identification of [the] defendant, (2) based on principles that are generally accepted within the relevant scientific community, (3) proffered by a qualified expert and (4) on a topic beyond the ken of the average juror" (People v LeGrand, 8 NY3d 449, 452; see People v Santiago, 17 NY3d 661, 669). Here, there was sufficient corroborating evidence of the defendant's guilt, including surveillance footage of the incident and the defendant's incriminating statements to law enforcement officials (see People v Rhodes, 115 AD3d 681, 681; People v Allen, 53 AD3d 582, 584-585, affd 13 NY3d 251). Moreover, there is no indication in the record that the complainant, who is Trinidadian, is of a different cognizable racial group than the defendant, who asked the court to take judicial notice of him as "a light skinned Black male," and no studies were shown to have been conducted regarding the cross-race effect under these circumstances. Thus, the defendant failed to demonstrate that the proposed expert testimony on cross-racial identifications was both relevant to the complainant's identification of him and based on principles that are generally accepted within the relevant scientific community (cf. People v Abney, 13 NY3d 251, 258; People v Nazario, 100 AD3d 783, 784). Contrary to the defendant's contention, the complainant's apparent mischaracterization of the defendant as being Hispanic does not establish his entitlement to present this expert testimony. We further note that, notwithstanding that the surveillance footage of the incident shows the perpetrator in a hat and sunglasses, the jury nevertheless had an opportunity to view the surveillance footage and make its own determination as to the identity of the perpetrator.
The defendant's additional contentions regarding the admission of expert testimony on issues relating to the reliability of the complainant's identification of the defendant, including the Supreme Court's failure to hold a Frye hearing (Frye v United States, 293 F 1013 [DC Cir]), are unpreserved for appellate review, and we decline to reach them in the interest of justice.
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are without merit.
IANNACCI, J.P., RIVERA, ZAYAS and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court