■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v YILBERT CARMONA-CAVIEDES, Appellant. [606 NYS2d 731] —Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Santagata, J.), rendered December 6, 1991, convicting him of conspiracy in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

During the early morning hours of December 6, 1989, following a lengthy investigation into the drug activities of the Colombian Cali cartel, police investigators observed members of the cartel move 415 kilograms of cocaine from a "stash" house located in Nassau County to locations in Westchester County. In subsequent searches on the same day, pursuant to warrants, the police recovered the transferred cocaine, quantities of money, and a number of handguns. From the Nassau County "stash house", they recovered over 900 kilograms of cocaine and large amounts of currency. Following these sei-

zures, as the police were preparing to execute yet another search warrant that same day, they stopped the defendant's vehicle after it twice approached and slowed down in front of the location to be searched. Earlier that day, the police had observed this vehicle repeatedly circle the Nassau County "stash" house, and they knew from a computer check that the vehicle was registered to a name and address which was being used by the targets of their investigation to register other vehicles. The passenger of the defendant's vehicle, who had been observed moving the 415 kilograms of cocaine that morning and who was a known member of the drug organization, was immediately arrested. The police requested identification from the defendant and, as a protective measure, first patted down his waist area. Noticing that he had been reaching in his pockets, the officers asked the defendant to place the contents of his jacket pockets on his car. As the defendant looked for his driver's license, a State police investigator recognized one of the papers on the car as a document connected to the seized cocaine and to the Nassau County "stash" house. The defendant was thereafter arrested, and the paper was seized.

The defendant contends that the hearing court erred in failing to suppress the document that was seized. We disagree. Significantly, the defendant does not challenge the legality of the stop of his vehicle. Nor could he since, under the circumstances, it is clear that the police had the requisite reasonable suspicion to stop the vehicle (see, People v Sobotker, 43 NY2d 559; People v Boomer, 187 AD2d 659; People v Fabian, 178 AD2d 544; People v Collado, 169 AD2d 531). Once the vehicle was stopped, the police could properly request the occupants to step out of the car (see, People v Robinson, 74 NY2d 773, cert denied 493 US 966; People v Johnson, 102 AD2d 616).

Turning now to the search of the defendant, we begin our analysis with the observation "that the constitutional prohibition against searches and seizures is addressed only to searches and seizures which are unreasonable" (People v Huntley, 43 NY2d 175, 180; People v Esajerre, 35 NY2d 463, 467). Generally, a search must " 'be confined in scope to an intrusion reasonably designed to discover' " a concealed weapon (see, People v Whitehead, 135 AD2d 997, 998-999, quoting Terry v Ohio, 392 US 1, 29). Moreover, in this regard, the admonition of the Court of Appeals in People v Chestnut (51 NY2d 14, 23) is apt: "Courts simply must not, in this difficult area of street encounters between private citizens and law enforcement officers, attempt to dissect each individual

act by the [officer]; rather the events must be viewed and considered as a whole, remembering that reasonableness is the key principle when undertaking the task of balancing the competing interests presented".

Viewing the circumstances as a whole, it is clear that the police had ample reason to believe that the defendant was part of the criminal organization and to fear that he was armed and dangerous and that his pockets might conceal some instrument of danger. This is especially true since the police were aware that a number of weapons had been recovered during the arrests of other cartel members and the searches conducted earlier in the day. Thus, the police properly conducted a limited patdown of the defendant (see, People v Allen, 73 NY2d 378; People v Rodriguez, 177 AD2d 521).

Moreover, it is noted that the officer only patted down the defendant once, and that examination was limited to the area around the defendant's waist. Since that patdown was inconclusive, it was only natural that as the defendant reached into his jacket pockets (which had not been patted down) to retrieve his license and registration, the officer became concerned that the defendant could still pull out some type of weapon. Accordingly, the officer told the defendant to place the contents of the pockets into which he had been reaching on the hood of the car. Contrary to the defendant's argument, there was nothing inappropriate in the officer's instruction to empty his jacket pockets. Notably, the officer's order was limited to the contents of the pockets into which the defendant was placing his hands; it was not a generalized direction designed to search all of the defendant's belongings or person. As the officer testified, he only wanted to see what the defendant was going to be handling, concerned as he was that these pockets contained some form of weapon that could be used against him. The officer did not examine or search the items produced but, instead, permitted the defendant to look for his identification papers. Thus, it is clear that the officer's actions were limited to measures necessary to protect himself.

Under the particular circumstances of this case, the minimal intrusion of the officer's request that the defendant first empty out the pockets did not constitute an unreasonable search. Once the paper was in plain view on the car, the police were entitled to seize it upon the realization of its connection to the cocaine seized earlier in the day (see, People v Sallito, 186 AD2d 766; People v Lumpkins, 157 AD2d 804).

We also find that, under the circumstances of this case, the

sentence imposed was neither harsh nor excessive *(see, People v Suitte,* 90 AD2d 80). Mangano, P. J., Balletta, Lawrence and O'Brien, JJ., concur.