■ In the Matter of JAKWON R., a Person Alleged to be a Juvenile Delinquent, Respondent. PRESENTMENT AGENCY, Appellant. [973 NYS2d 228]—

In a juvenile delinquency proceeding pursuant to Family Court Act article 3, the Presentment Agency appeals from (1) an order of the Family Court, Kings County (Toussaint, J.), dated March 26, 2012, which, after a hearing, granted that branch of Jakwon R.'s omnibus motion which was to suppress a BB gun recovered from his backpack, and (2) an order of the same court dated March 27, 2012, which dismissed the petition.

Ordered that the orders are reversed, on the law, without costs or disbursements, that branch of Jakwon R.'s omnibus motion which was to suppress the BB gun is denied, the petition is reinstated, and the matter is remitted to the Family Court, Kings County, for further proceedings consistent herewith.

"[I]n [the] difficult area of street encounters between private citizens and law enforcement officers . . . the events must be viewed and considered as a whole, remembering that reasonableness is the key principle when undertaking the task of balancing the competing interests presented" (*People v Chestnut*, 51 NY2d 14, 23 [1980], *cert denied* 449 US 1018 [1980]; *see People v Carmona-Caviedes*, 200 AD2d 627, 628-629 [1994]; *People v Tratch*, 104 AD2d 503, 504 [1984]). "A determination of reasonableness turns upon the facts of each case" (*People v Batista*, 88 NY2d 650, 653 [1996]; *see People v Chestnut*, 51 NY2d at 22).

"At a suppression hearing, the Presentment Agency bears the burden of establishing the legality of police conduct in the first instance" (*Matter of Robert D.*, 69 AD3d 714, 716 [2010]; *see People v Berrios*, 28 NY2d 361, 367 [1971]; *People v James*, 72 AD3d 844, 844 [2010]; *People v Thomas*, 291 AD2d 462, 463 [2002]). The respondent, however, bears the ultimate burden of proving, by a preponderance of the credible evidence, that the evidence should not be used against him or her (*see People v Berrios*, 28 NY2d at 367; *People v Spann*, 82 AD3d 1013, 1014 [2011]; *People v Thomas*, 291 AD2d at 463).

At the suppression hearing in this case, the Presentment Agency established that the police had reasonable suspicion that the respondent and his two companions were the individuals described in a radio run as the perpetrators of a robbery which occurred approximately 10 minutes prior to the stop of the respondent and his companions (*see generally People v Martinez*, 80 NY2d 444, 447 [1992]; *People v De Bour*, 40 NY2d 210, 223 [1976]; *People v Shuler*, 98 AD3d 695, 696 [2012]; *People v Davenport*, 92 AD3d 689, 690 [2012]). The police were justified in stopping and detaining the respondent and the two

other individuals based on the similarities between them and the individuals described over the radio, including the number of individuals and what they were wearing, the close proximity of the three to the site of the crime and their presence at a location toward which the perpetrators were reported to have been traveling, and the short passage of time between the crime and observation of the three individuals (*see People v Palmer*, 84 AD3d 1414, 1414 [2011]; *People v James*, 72 AD3d at 844-845; *People v Hines*, 46 AD3d 912, 913 [2007]; *People v Private*, 259 AD2d 504, 504 [1999]). Further, based on the radio report they received, the police officers had reasonable suspicion that one of the three individuals was carrying a firearm, which had just been used in committing the robbery. Under these circumstances, the police were permitted to "conduct a frisk or take other protective measures" (*People v Shuler*, 98 AD3d at 696; *see Terry v Ohio*, 392 US 1, 29-30 [1968]). Contrary to the respondent's contention, the police were not limited to a pat down of the his person, but were justified, "on grounds of safety and precaution," in examining the respondent's backpack, a "personal item[ ] capable of concealing a weapon within the suspect's grabbable reach" (*People v Brooks*, 65 NY2d 1021, 1023 [1985]; *see People v Davis*, 64 NY2d 1143 [1985]; *People v Moore*, 32 NY2d 67 [1973], *cert denied* 414 US 1011 [1973]; *People v Shackleford*, 57 AD3d 578, 579 [2008]; *People v Tratch*, 104 AD2d at 504). As the respondent failed to prove, by a preponderance of the credible evidence, that the evidence should not be used against him (*see generally People v Berrios*, 28 NY2d at 367; *People v Spann*, 82 AD3d at 1014; *People v Thomas*, 291 AD2d at 463), the Family Court erred in granting that branch of the respondent's omnibus motion which was to suppress the BB gun.

Under the circumstances of this case, since suppression is being denied, the petition must be reinstated and the matter remitted to the Family Court, Kings County, for further proceedings. Angiolillo, J.P., Dickerson and Sgroi, JJ., concur.

Hinds-Radix, J., dissents, and votes to affirm the orders appealed from, with the following memorandum: At the suppression hearing, Police Officer Gregory Marquart testified that on January 9, 2011, at approximately 5:20 p.m., he received a radio transmission reporting that a robbery occurred at a specified address and describing the alleged perpetrators. Officer Marquart testified that he received only one radio transmission relaying the description. He testified that the perpetrators were described as three male blacks, one wearing tan pants, a black jacket, and gray hoodie, one wearing blue jeans and a light-

colored hoodie, and one wearing blue jeans, a blue hoodie, and black hat. Upon listening to a tape of the radio transmission, he noted that the males were described as at least 20 to 21 years old.

Officer Marquart's partner, Police Officer George Delgado, testified that he heard a number of different descriptions over the radio, but could not recall how many. The first description was of three male blacks, ages 18 to 23 years, one wearing tan pants, and the other carrying a black book bag and wearing a baseball cap. He recalled hearing a second description "almost simultaneously," again noting that one of the males was wearing tan pants, and the other had a book bag and was wearing a hat.

The tape of the radio transmissions indicates that the description was of three male blacks between 21 and 22 years old, but describes only two of them. The male with the gun was described as wearing tan pants, while the second male was described as wearing a light-colored jacket, with a navy blue cloth bag on his back, and possibly wearing a cap. After canvassing the area for about 10 minutes, Officer Marquart observed three male blacks about two blocks from the scene of the robbery, standing near a video store. According to Officer Marquart, one was wearing tan pants, a black jacket, and a light-colored hoodie, one was wearing blue jeans and a light-colored hoodie, and the third individual, later identified as the respondent, was wearing blue jeans, a green hoodie, and a black hat, and carried a black school backpack, and appeared to be 19 years old. In his arrest report, Officer Marquart noted that the respondent was wearing green, but failed to include other details, such was whether the respondent was in fact wearing a light-colored jacket or hoodie. Officer Marquart acknowledged that the respondent did not match the description of the man holding the gun.

According to Officer Delgado, the three men were "coming from the direction of the incident," and the respondent appeared to be between 18 and 23 years old. Officer Delgado later testified that the respondent appeared to be between 16 and 20 years old. The respondent and his two companions were stopped because one was wearing tan pants and the respondent was carrying a dark book bag and was wearing a hat.

Officers Marquart and Delgado frisked the three males, because the complainant in the robbery indicated that one of the perpetrators of the robbery was armed with a firearm. No weapons were found on their persons. However, when frisking the respondent, Officer Marquart took off his backpack, put it

down on the ground, and heard a "clanking sound come out of the backpack." The officer asked the respondent what was in the backpack, and the respondent replied that his umbrella was inside. The officer did not believe that explanation, because "umbrellas don't make that sound," opened the backpack, and found what he believed to be a 9 millimeter pistol, but which was, in actuality, a BB gun. The backpack also contained an umbrella, a bottle of soda, and a bag of chips.

The robbery complainant was brought to the scene for a showup. After the showup, the respondent's companions were not linked with any criminal activity.

At the conclusion of the hearing, the Family Court concluded that the respondent did not match the description of either of the two assailants described in the radio transmission, since he was not between the ages of 20 and 21 years, was not wearing tan pants, and was not wearing a light-colored jacket. The Family Court therefore determined that reasonable suspicion did not exist to detain the respondent, and granted that branch of the respondent's omnibus motion which was to suppress the BB gun, as its recovery by the police "flowed from an impermissible stop of the respondent."

In order to forcibly stop an individual, the police must have "reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor" (*People v De Bour*, 40 NY2d 210, 223 [1976]; *see People v Pines*, 99 NY2d 525, 527 [2002]; *People v Martinez*, 80 NY2d 444, 447-448 [1992]). A general description, without more, is insufficient to provide reasonable suspicion (*see People v Harvey*, 70 AD3d 1454, 1455 [2010]). As noted by the Presentment Agency, a person's conduct, taken in conjunction with a general description, may be sufficient to provide reasonable suspicion (*see People v McCrary*, 71 AD3d 1049, 1050 [2010]; *see also People v Palmer*, 84 AD3d 1414 [2011]).

In the instant case, the testimony of Officer Marquart as to the description in the radio transmission was embellished or tailored to comport with the actual appearance of the respondent and his companions and, thus, to meet constitutional objections (*see People v Vincente*, 63 NY2d 745 [1984]). The testimony of his partner, Officer Delgado, that the three were stopped because they were male and black, one was wearing tan pants, and the respondent was carrying a bag and wearing a hat in winter, was more accurate. However, that general description, standing alone, was insufficient to provide reasonable suspicion (*see People v Polhill*, 102 AD3d 988, 989 [2013]; *People v Thomas*, 300 AD2d 416 [2002]). Further, it appears from the record that

the respondent did not match the description of the man with the hat and bag, since he was not wearing a light-colored jacket. Moreover, the respondent was younger than the individuals described in the radio transmission, in that the respondent was only 15 years old.

In support of its claim that the police had reasonable suspicion to stop the respondent and his companions, the Presentment Agency relies on *People v McCrary* (71 AD3d at 1050), where the police based the stop of the defendant on the fact that he matched a general description of the perpetrator, was seen running from the scene of the crime, fled from the police, and hid under a bush. In the instant case, Officer Delgado claimed that the respondent and his companions were "coming from the direction of the incident." However, that testimony appears to be an embellishment, since Officer Marquart claimed that they were standing near a video store, and, if the respondent and his companions were fleeing from the scene of the robbery several minutes after the robbery, they should have been more than two blocks away. Therefore, the record supports the Family Court's conclusion that the respondent was stopped solely based upon a description which did not match his actual appearance.

Since the Presentment Agency failed to meet its burden of coming forward in the first instance with evidence demonstrating the legality of the police conduct (*see People v Wise*, 46 NY2d 321, 329 [1978]; *People v Hernandez*, 40 AD3d 777, 778-779 [2007]), the Family Court properly granted that branch of the defendant's omnibus motion which was to suppress the BB gun. Accordingly, I dissent and vote to affirm the orders appealed from.