People v Garcia (2021 NY Slip Op 03196)





People v Garcia


2021 NY Slip Op 03196


Decided on May 19, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
SYLVIA O. HINDS-RADIX
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2019-08333
 (Ind. No. 2448/17)

[*1]The People of the State of New York, respondent,
v
Corona Garcia, appellant.


Steven A. Feldman, Manhasset, NY (Arza Feldman of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill and Natasha R. Pooran of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Peter F. Vallone, Jr., J.), rendered June 27, 2019, convicting him of robbery in the first degree, robbery in the second degree, grand larceny in the fourth degree, and assault in the third degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the facts, the indictment is dismissed insofar as it relates to the defendant, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50.
The complainant was assaulted and robbed by four men in September 2017. The defendant and three codefendants were charged, inter alia, with robbery in the first and second degrees, grand larceny in the fourth degree, and assault in the third degree, and were jointly tried.
At the jury trial, the complainant testified that on the night in question, he was walking through a small park on his way to work. The complainant described one of the four men—whom he had seen approximately 35 times before in the same park, as well as at the complainant's workplace—as heavy set, with dark skin and a long, bleach-blond beard and a cap.
According to the complainant, the four men were sitting on a bench as he entered the park. The bearded man stood up, approached the complainant, and asked for five dollars. When the complainant refused, the bearded man began to raise his voice, and the other three men stood up and positioned themselves behind the complainant. The bearded man then pulled out a knife and lunged at the complainant and the complainant backed into the other three men, who punched him in the back, threw him to the ground, kicked him, and took his wallet. The complainant could not see his attackers' faces while he was on the ground, and the incident lasted only "15 seconds [or] maybe less." After the attack, the complainant observed the four men leave the park together, proceed down the street, and turn the corner until they were out of sight; the bearded man was on a bicycle and the other three were on foot.
Within a few seconds, the complainant got up and went to a deli across the street to call the police. The complainant provided a description of the bearded man to the 911 operator, but [*2]not of the other three men. The police arrived at the scene within minutes and spoke with the complainant outside the deli. What happened next is not entirely clear.
The complainant testified that he told the responding police officer that one of the accomplices of the bearded man was short and wore a black shirt and a bandana depicting the Mexican flag. The police then went into the park, where there were "3 to 4 more people," and started canvassing the area with their flashlights. Approximately 20 minutes later, the complainant was brought back to the park in a police vehicle to see if he could recognize someone who had just been stopped, and the complainant identified the man with the black shirt and bandana. When asked, in open court, to identify the man who was wearing the bandana, the complainant initially pointed to the defendant but said he was "not sure." Later, the complainant identified one of the codefendants as the man with the bandana.
By contrast, the police officer who spoke with the complainant outside the deli testified that the only description given of the perpetrators was four male Hispanics, one with a bleach-blond beard, and that the complainant never mentioned that one of the perpetrators was wearing a bandana. After speaking with the complainant, the officer, accompanied by the complainant, crossed the street and entered the park where the robbery had occurred. The defendant, who was wearing a black shirt and sitting on a bench approximately 100 feet from where the crime took place, was the only person in the park. The officer walked up to the defendant, who did not flee or offer any resistance, told him to stand, and placed him in handcuffs. Upon searching the defendant, the officer found a bandana depicting the Mexican flag in his pocket. According to the arresting officer, upon seeing the bandana, the complainant told the officer for the first time that one of the perpetrators had been wearing a similar bandana. The complainant's wallet and its contents were never recovered.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's identity as one of the complainant's assailants and his guilt of the crimes of which he was convicted beyond a reasonable doubt. However, under the particular facts presented, we find that the verdict was against the weight of the evidence.
In determining whether a verdict is against the weight of the credible evidence, this Court is required to first determine whether an acquittal would not have been unreasonable (see People v Danielson, 9 NY3d 342, 348; People v Romero, 7 NY3d 633, 643). If an acquittal would not have been unreasonable, then this Court "must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (People v Danielson, 9 NY3d at 348). In weighing the conflicting testimony in a single-witness identification case, "we must independently consider, among other things, the truthfulness and reliability of the identification testimony" (Matter of Shannel P., 137 AD3d 1039, 1041). "If it appears that the fact-finder failed to give the evidence the weight it should have been accorded, then this Court may set aside the verdict" (People v Battle, 116 AD3d 782, 784; see People v Oneill, 141 AD3d 606, 607).
In this single-witness identification case, an acquittal would not have been unreasonable. While the defendant was found in possession of a distinctive-looking bandana in close spatial and temporal proximity to the scene of the robbery, none of the police witnesses testified that the complainant had mentioned the existence of such a bandana prior to the defendant's arrest. Moreover, the record evidence does not explain why the police would have expected to find one of the suspects in the park, when the complainant himself testified that the four suspects left together after the robbery. We also find it significant that the complainant testified that he had seen the man with the bandana on two occasions prior to the night of the robbery, yet he also testified that he had never seen the defendant before the night of the robbery, and in fact identified one of the codefendants in court as the man with the bandana.
Given the absence of any evidence linking the defendant to the crime other than the complainant's identification and his spatial and temporal proximity to the crime scene, we find that [*3]the rational inferences which can be drawn from the evidence presented at trial do not support the conviction beyond a reasonable doubt (see People v Mann, 184 AD3d 670; People v James, 179 AD3d 1095; People v Oneill, 141 AD3d at 608; People v Russell, 99 AD3d 211; People v Jackson, 205 AD2d 639).
CHAMBERS, J.P., HINDS-RADIX, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court