Matter of Ahmand T. (2024 NY Slip Op 06051)

Matter of Ahmand T.

2024 NY Slip Op 06051

Decided on December 4, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 4, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
PAUL WOOTEN
JANICE A. TAYLOR
PHILLIP HOM, JJ.

2021-04668
 (Docket No. D-3744-20)

[*1]In the Matter of Ahmand T. (Anonymous), appellant.

Lesley J. Lanoix, Jamaica, NY, for appellant.
Thomas A. Adams, County Attorney, Mineola, NY (Robert F. Van der Waag of counsel; Kyle Kessler on the brief), for respondent.

DECISION & ORDER
In a juvenile delinquency proceeding pursuant to Family Court Act article 3, Jahmeir T. appeals from an order of disposition of the Family Court, Nassau County (Ellen R. Greenberg, J.), dated July 6, 2021. The order of disposition, upon an order of fact-finding of the same court dated May 21, 2021, finding that Jahmeir T. committed acts which, if committed by an adult, would have constituted the crimes of assault in the third degree and menacing in the third degree, and after a dispositional hearing, adjudicated him a juvenile delinquent and placed him on probation for a period of six months. The appeal brings up for review the denial, after a hearing, of that branch of Jahmeir T.'s motion which was to suppress identification evidence.
ORDERED that the appeal from so much of the order of disposition as placed Jahmeir T. on probation for a period of six months is dismissed as academic, without costs or disbursements; and it is further,
ORDERED that the order of disposition is reversed insofar as reviewed, on the law and the facts, without costs or disbursements, the order of fact-finding is vacated, the petition is dismissed, and the matter is remitted to the Family Court, Nassau County, for further proceedings pursuant to Family Court Act § 375.1.
In this juvenile delinquency proceeding, the Family Court found, after a fact-finding hearing, that the appellant committed acts which, if committed by an adult, would have constituted the crimes of assault in the third degree and menacing in the third degree, and, after a dispositional hearing, adjudicated him a juvenile delinquent and placed him on probation for a period of six months.
The appeal from so much of the order of disposition as placed the appellant on probation for a period of six months must be dismissed as academic, as the period of probation has expired (see Matter of Tyzay P.-B., 229 AD3d 632, 632-633; Matter of Jaron D., 204 AD3d 999, 999). However, the appeal from so much of the order of disposition as adjudicated the appellant a juvenile delinquent has not been rendered academic, as there may be collateral consequences resulting from the adjudication of delinquency (see Matter of Jaron D., 204 AD3d at 999; Matter [*2]of Jean Daniel F., 200 AD3d 996, 997).
Contrary to the presentment agency's contention, we find that the Family Court's fact-finding determination was against the weight of the evidence. "In evaluating a contention that the evidence supporting a fact-finding at a juvenile delinquency proceeding is against the weight of the evidence, this Court first determines whether a different fact-finding would not have been unreasonable" (Matter of Shamik M., 117 AD3d 1056, 1057). "If, based on all of the credible evidence, a different finding would not have been unreasonable, this Court will then 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (id., quoting People v Bleakley, 69 NY2d 490, 495).
Here, at the fact-finding hearing, the complainant testified that on January 21, 2020, at around 12:00 p.m., he observed four or five black males on bicycles for "seconds" while walking on Washington Avenue in Roosevelt. The complainant indicated that after he turned onto Grant Street and walked past several houses, he was "struck from behind." When asked if he knew who had struck him from behind, the complainant answered, "No, because I was on my back, and they had just hit me." The complainant was then asked if he noticed anyone around him while walking on Grant Street, and he answered, "No." After further questioning, the complainant claimed that at some point before he was struck, he had turned around and saw the same individuals that he had seen previously on Washington Avenue on bicycles. The complainant testified that after he was struck, he fell "face down" to the ground and that the alleged assailants hit and kicked him for two to three minutes. The complainant indicated that when he got up, he saw four individuals flee toward Washington Avenue. When asked if he was able to see the alleged assailants' faces, the complainant answered, "Just for a little bit, because when I got up, they ran off." The complainant subsequently acknowledged that he only observed "the backs of their heads" as they fled.
The complainant further testified that after the incident, he called 911 and the police arrived. The complainant was then taken in a police car to the corner of Lakeside Drive and Elmwood Avenue in Roosevelt for a showup identification procedure, and he identified the appellant as one of the assailants from a group of three individuals detained by police. During the showup identification procedure, the complainant was in the backseat of a police car looking through the front windshield. The complainant acknowledged that he made the identification with only one eye because his right eye was injured and his vision was blurry from the incident. The complainant claimed that he made the identification from a distance of approximately 42 feet from the detained individuals. However, testimony was elicited during the fact-finding hearing from Dino Delaney, a witness for the appellant, that the distance between the complainant's position at the corner to the location where the appellant and the other individuals were detained was 238 feet.
We find that in this single-witness identification case, a different determination than that made by the Family Court would not have been unreasonable, and that, upon weighing the "relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d at 495 [internal quotation marks omitted]), the court's determination was against the weight of the evidence (see People v Garcia, 194 AD3d 956, 959; Matter of Shannel P., 137 AD3d 1039, 1042). Even assuming, arguendo, that the complainant was able to identify the appellant as one of the individuals he observed for mere "seconds" riding a bicycle on Washington Avenue prior to the incident, the complainant offered conflicting testimony as to whether he observed those same individuals behind him on Grant Street before he was "struck from behind." Further, while the complainant initially claimed that he had a momentary opportunity to see his alleged assailants' faces after he stood up, he later acknowledged that he merely observed "the backs of their heads" as they fled. Moreover, the credibility of the complainant's testimony was undermined by his claim to have been able to identify the appellant during a showup identification procedure from a significant distance in the backseat of a police car using only one eye. Although the complainant claimed that he made the identification from a distance of approximately 42 feet, the appellant presented evidence that the actual distance from the corner of Lakeside Drive and Elmwood Avenue, where the complainant was positioned in a police car, to the address where the appellant was detained and subsequently arrested was 238 feet. The appellant also presented testimony from Alison Risco, an optometrist, that it [*3]would have been impossible for the complainant to see any details from a distance of 238 feet, even using both eyes, and that vision is diminished by 30% to 50% when using only one eye as the complainant had done during the showup identification procedure.
Consequently, we find that the Family Court's fact-finding determination was against the weight of the evidence.
In any event, contrary to the presentment agency's contention, the Family Court should have granted that branch of the appellant's motion which was to suppress the showup identification evidence. "'At a suppression hearing, the Presentment Agency bears the burden of establishing the legality of police conduct in the first instance'" (Matter of Jakwon R., 110 AD3d 723, 724, quoting Matter of Robert D., 69 AD3d 714, 716). Here, the testimony presented at the suppression hearing established that the police, using two police cars, stopped the appellant and two companions because they fit the general description given by the complainant of "black male[ ]" "youths" riding bicycles. The presentment agency did not present any evidence at the suppression hearing that the appellant and his companions were engaged in any suspicious behavior at the time of the police stop. Moreover, at the time of the police stop, the appellant was with only two companions, which conflicted with the complainant's description of "five youths." Under these circumstances, the evidence presented at the suppression hearing was insufficient to establish that the police had reasonable suspicion to stop the appellant (see Matter of Jakwon R., 110 AD3d at 727-728; People v Phillips, 196 AD2d 770, 771). Since the initial stop of the appellant was unlawful, the court should have granted that branch of the appellant's motion which was to suppress the showup identification evidence as the fruit of the poisonous tree (see People v Bermudez-Cedillos, 228 AD3d 681, 682).
Further, "[w]hile the [appellant] bears the ultimate burden of proving that a showup procedure is unduly suggestive and subject to suppression, 'the [presentment agency] h[as] the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure'" (People v Benn, 177 AD3d 759, 760, quoting People v Chipp, 75 NY2d 327, 335; see Matter of Heydi M., 154 AD3d 759, 760). "A showup identification procedure is unduly suggestive when it creates a 'substantial likelihood of misidentification'" (People v Galvez-Marin, 225 AD3d 622, 625, quoting People v James, 128 AD3d 723, 725 [internal quotation marks omitted]). Here, the presentment agency failed to satisfy its initial burden of establishing the reasonableness of the police conduct and the lack of any undue suggestiveness in the showup identification procedure. Wayne Bowman, a police officer who accompanied the complainant during the showup identification procedure, testified at the suppression hearing that he assured the complainant that "[w]e're far enough back they're not going to be able to see you" and acknowledged that he and the complainant were positioned about the distance of "[a] football field" away from the appellant and his companions during the showup identification procedure. Moreover, the complainant acknowledged at the suppression hearing that prior to the showup identification procedure, Bowman told him that the police "had stopped people that fit the description." Under these circumstances, the Family Court improperly determined that the showup identification procedure was reasonable and not unduly suggestive, and thus, the court should have granted that branch of the appellant's motion which was to suppress the showup identification evidence.
In light of our determination, we need not reach the appellant's remaining contentions.
DUFFY, J.P., WOOTEN, TAYLOR and HOM, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court